[No. 12080–1–II. Division Two. November 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. MOLLIE HANSON, *Appellant.*

*R. Wayne Torneby, Jr.,* and *Springer, Norman & Workman,* for appellant.

*C.C. Bridgewater, Jr., Prosecuting Attorney,* and *Randolph Furman, Deputy,* for respondent.

MORGAN, J.—Mollie Hanson appeals her conviction on three counts of violating certain state statutes regulating the sale of prearrangement contracts by cemeteries. Former RCW 68.46.210. Because of constitutional errors in the jury instructions, we reverse and remand for new trial.

Green Hills Cemetery, a corporation, was doing business in Cowlitz County in 1985, 1986 and 1987. Among other activities, it sold funeral goods and services on a "pre–need" basis. When such a sale was made, the purchaser would promise to pay a fixed purchase price, and Green Hills would promise to deliver funeral goods and services when the purchaser or his beneficiary died. The purchaser would pay the fixed purchase price in one lump sum at the time of the sale, or by installments commencing at or shortly after the time of the sale. Each sale was embodied in a written contract, with the parties to the contract being the purchaser and Green Hills.

In 1985 and 1986, Green Hills had neither a license to sell prearrangement contracts nor an exemption from the requirement that a license be obtained. In 1987, it obtained an exemption.

In 1985, 1986, and 1987, Mollie Hanson was the general manager and treasurer of Green Hills. She ran the business on a day–to–day basis and was also a minority stockholder. She personally participated in some of the corporation's "pre–need" sales, but she was not a party to any of the resulting contracts.

The State commenced this case by filing a 3–count information against Mollie Hanson. Counts 1 and 2 charged violations in 1986 and 1985, respectively. Each alleged that the defendant knowingly entered into prearrangement contracts without a license and without an exemption. Count 3 charged violations in 1987. It alleged that the defendant, after obtaining an exemption, knowingly entered into prearrangement contracts without depositing into a prearrangement trust fund 100 percent of the funds received. A jury trial was held, and the jury convicted on all three counts.

## I

Defendant's first contention is that the "pre–need" sales by Green Hills were not "prearrangement contracts" within the meaning of RCW 68.46.010(1).[1] Specifically, defendant contends that the statute does not encompass all situations in which the purchaser pays partly or fully in advance, but only those situations in which a cemetery refuses to sell goods or services unless the purchaser pays in full at the time the contract is formed.

We disagree, for defendant's contention is contrary to the plain meaning of the statute. The statute by its terms encompasses all contracts for cemetery merchandise or services pursuant to which the purchaser makes full or partial payment before the cemetery's performance is due.

## II

Defendant's second contention is that RCW 68.46-.010(1)[2] and 68.46.210[3] are void for vagueness. In support

---

[1]RCW 68.46.010(1) provides,

"(1) 'Prearrangement contract' means a contract for purchase of cemetery merchandise or services, unconstructed crypts or niches, or undeveloped graves to be furnished at a future date for a specific consideration which is paid in advance by one or more payments in one sum or by installment payments."

[2]See footnote 3.

[3]Former RCW 68.46.210 provides,

"Any person who violates or aids or abets any person in the violation of any of the provisions of this chapter shall be guilty of a class C felony . . .".

of this contention, she relies upon *State v. Postema,* 46 Wn. App. 512, 515, 731 P.2d 13, *review denied,* 108 Wn.2d 1014 (1987). In that case, the court said:

Therefore, the test for vagueness is whether a person of common intelligence must necessarily guess at its meaning and differ as to its application. *State v. O'Neill,* [92 Wn.2d 61, 593 P.2d 1314 (1979)]. This test includes two components: adequate notice to citizens and adequate standards to prevent arbitrary enforcement. [*State v.*] *Maciolek,* [101 Wn.2d 259, 264, 676 P.2d 996 (1984)].

(Footnote omitted.)

RCW 68.46.010(1) is not void for vagueness. Although inartfully drafted, it adequately apprises people of common intelligence that when a purchaser pays part or all of the consideration due for cemetery goods and services in advance of the date on which the cemetery is to perform, the contract will be deemed a prearrangement one, and will be subject to the licensing and exemption requirements of RCW 68.46.

■ Likewise, former RCW 68.46.210 is not void for vagueness. Although it must be read in conjunction with the other "provisions of this chapter," a person of common intelligence can do that, and upon doing it can discern what is required and what is prohibited.

III

Defendant's third contention is that the trial court erred on each count by failing to give what will hereinafter be called a *Petrich* instruction. *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984). The State responds by arguing that such an instruction was not required, and that if it was, any error was waived or harmless.

In *State v. Petrich, supra* at 572, the Supreme Court said:

When the evidence indicates that several distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct, jury unanimity must be protected. We therefore adhere to the [*State v.*] *Workman* [66 Wash. 292, 119 P. 751 (1911)] rule, with the following modification. The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is

instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.[4]

To apply *Petrich*, three questions must be asked. First, what must be proven under the applicable statute?[5] With most criminal statutes, this will be a single event, such as a burglary, robbery or assault. With some, though, it will be a continuing course of conduct, such as operating a prostitution enterprise. RCW 9A.88.060(1); *State v. Elliott*, 114 Wn.2d 6, 14, 785 P.2d 440 (1990). When the requirements of a particular statute are disputed, the rules of statutory construction will govern.

Second, what does the evidence disclose? As with all proposed jury instructions, this involves looking at the evidence in the light most favorable to the proponent of the instruction.[6] *Seattle v. Cadigan*, 55 Wn. App. 30, 37, 776

---

[4]*Petrich* has been applied or interpreted in a number of subsequent cases, including *State v. Camarillo*, 115 Wn.2d 60, 794 P.2d 850 (1990); *State v. Elliott*, 114 Wn.2d 6, 785 P.2d 440 (1990); *State v. Handran*, 113 Wn.2d 11, 775 P.2d 453 (1989), and *State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). *See also* the earlier cases of *State v. Stephens*, 93 Wn.2d 186, 607 P.2d 304 (1980) and *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974).

[5]Normally, this question would be phrased in terms of what must be proven under the "to convict" jury instruction, for axiomatically that instruction can be no broader than the charge, and the charge can be no broader than the statute. In this case, however, the "to convict" instructions are alleged to be defective, and the charges have not been formally provided in the record from the court below. Thus, we phrase our question in terms of the underlying statute.

[6]This concept, easy to use in most situations, can take on an Alice–in–Wonderland quality when the issue is whether to give a *Petrich* instruction. If the defendant is the proponent of such an instruction, it will be necessary to take the evidence in the light most favorable to him or her. But to do this, it is necessary to discern whether the evidence is such that jurors *could* find more than one event sufficient to convict. This in turn can be determined only by taking the evidence in the light most favorable to the State. Thus, to view the evidence in the light most favorable to the defendant, it is necessary to view it in the light most favorable to the State.

If the State is the proponent of a *Petrich* instruction, the process is simply to view the evidence in the light most favorable to the State.

P.2d 727 (1989); *Lundberg v. All-Pure Chem. Co.*, 55 Wn. App. 181, 187, 777 P.2d 15, *review denied*, 113 Wn.2d 1030 (1989).

Third, does the evidence disclose more than one violation of the statute? This requires a comparison of what the statute requires with what the evidence proves. If the evidence proves only one violation, then no *Petrich* instruction is required, for a general verdict will necessarily reflect unanimous agreement that the one violation occurred.[7] On the other hand, if the evidence discloses two or more violations, then a *Petrich* instruction will be required, for without it some jurors might convict on the basis of one violation while others convict on the basis of a different violation.[8] In the latter situation, the result is a lack of jury unanimity with respect to the facts necessary to support conviction, and a consequent abridgment of the right to jury trial.

Counts 1 and 2 were based on RCW 68.46.170[9] and former 68.46.210.[10] RCW 68.46.170 prohibits the sale of

---

[7]It is this principle that governs the so-called alternative means cases. In those cases, the evidence includes only one event, even though it discloses alternative means by which the defendant may have participated in that event. *State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987); *State v. Franco*, 96 Wn.2d 816, 823–24, 639 P.2d 1320 (1982); *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976); *State v. Carothers, supra; State v. Bockman*, 37 Wn. App. 474, 682 P.2d 925 (1984).

[8]Child sexual abuse cases, of which *Petrich* is one, are illustrative. If the jury is instructed on one count of statutory rape, but the evidence discloses several separate events involving sexual penetration, some jurors might convict on the basis of one event while others convict on the basis of a different event.

[9]RCW 68.46.170 provides:

"No cemetery authority shall enter into prearrangement contracts in this state unless the cemetery authority has obtained a prearrangement sales license issued by the board or its authorized representative and such license is then current and valid."

[10]See footnote 3.

*any* prearrangement contract without a license or exemption, and former RCW 68.46.210 makes *any* violation of RCW 68.46 a class C felony. As a result, *each* sale of a prearrangement contract without a license or exemption is an event sufficient to support conviction.

The evidence on counts 1 and 2 showed a multitude of events sufficient to support conviction. Exhibit 8, related to count 1, and exhibit 7, related to count 2, each disclosed perhaps 100 prearrangement contracts, all formed without a license or exemption. While the defendant may not have participated in the formation of all of these, the evidence was sufficient to support a finding that she participated in the formation of many of them. Thus, the evidence disclosed multiple events sufficient to convict, and a *Petrich* instruction was required.

Count 3 was based on RCW 68.46.130[11] and former RCW 68.46.210.[12] RCW 68.46.130 requires that an exempt cemetery deposit into its trust account 100 percent of *each payment* received on a prearrangement contract,[13] and that the deposit be made by the 20th of the month following receipt.

---

[11]RCW 68.46.130 provides:

"The cemetery board may grant an exemption from any or all of the requirements of this chapter relating to prearrangement contracts to any cemetery authority which:

"(1) Sells less than twenty prearrangement contracts per year; and

"(2) Deposits one hundred percent of all funds received into a trust fund under RCW 68.46.030, as now or hereafter amended."

[12]See footnote 3.

[13]This is true because an exempt cemetery must deposit money into trust in the same way as a licensed one, RCW 68.46.130(2), and it is not enough for a licensed cemetery to deposit into trust a portion of the money received on a prearrangement contract. Instead, the licensed cemetery, if not bonded, must deposit into trust a portion of each prearrangement *payment* that it receives. RCW 68.46.030(1), (2). Overall, the statutory scheme appears to contemplate that for unbonded cemeteries, whether licensed or exempt, all or part of each prearrangement payment will not only be deposited into trust, but will also continue to be held to the credit of the particular payor, much as an attorney holds trust funds for a client. *See* RCW 68.46.050 (depository bank shall permit withdrawal of prearrangement trust funds "deposited under any specific prearrangement contract" only if the cemetery certifies that the contract has been performed or canceled).

RCW 68.46.010(5). Therefore, *each* failure to deposit by the 20th of the following month is a violation of RCW 68.46, and an event sufficient to support conviction. Former RCW 68.46.210.

Although the record provided to us is scanty, it seems to indicate many failures to deposit prearrangement funds into trust, with many of those failures being the responsibility of the defendant. Thus, we conclude that the evidence on count 3 disclosed multiple events, any one of which would have been sufficient to convict, and that in order to assure jury unanimity, a *Petrich* instruction was required.

The State argues that the defendant waived her right to *Petrich* instructions when she failed to object at trial, but we cannot agree. Usually, an appellate court will refuse to review error not raised at trial, but error affecting a constitutional right is an exception. RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Failure to give *Petrich* instructions affects the defendant's constitutional right to jury trial, *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990); *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988), and thus may be raised for the first time on appeal.

The State also argues that the failure to give *Petrich* instructions was harmless, but again we cannot agree. Constitutional error requires reversal unless it is harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967); *State v. Camarillo, supra; State v. Handran*, 113 Wn.2d 11, 15–16, 775 P.2d 453 (1989), and as explained in *State v. Kitchen*, 110 Wn.2d at 411, error will be deemed harmless only if no rational trier of fact could have a reasonable doubt as to whether each incident established the crime beyond a reasonable doubt.

On counts 1 and 2, numerous sales of contracts were introduced, and on count 3 numerous failures to deposit were introduced. With respect to some of these, the defendant's participation was clearly shown, and on others

it was not. Thus, a rational trier of fact could have had a reasonable doubt on some of them, and the test for harmless error is not met.

IV

Defendant's fourth contention is that the "to convict" instructions on counts 1 and 2 failed to contain all the elements of the crimes charged. As before, the State argues that there was no error, and that if there was, it was waived or harmless.

■ It is constitutionally required that the jury be instructed on all essential elements of the crime charged. *State v. Scott,* 110 Wn.2d at 690; *State v. Johnson,* 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985). Due process requires that the State prove each essential element of the crime charged beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. McHenry,* 88 Wn.2d 211, 214, 558 P.2d 188 (1977), and it prohibits jury instructions which relieve the State of this burden. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *State v. McCullum,* 98 Wn.2d 484, 487–88, 656 P.2d 1064 (1983); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). Jury instructions that omit essential elements of the crime charged relieve the State of this burden, for they permit the jury to convict without proof of the omitted elements. Therefore, such instructions violate due process. *State v. Scott, supra; State v. Johnson, supra; State v. Davis,* 27 Wn. App. 498, 505–06, 618 P.2d 1034 (1980); *State v. Negrin,* 37 Wn. App. 516, 524, 681 P.2d 1287, *review denied,* 102 Wn.2d 1002 (1984).

In this case, the instructions on counts 1 and 2 did not contain the essential elements of the crimes charged. To see why this is so, it is necessary to observe preliminarily that the elements of the crimes must be set forth not on the basis of the defendant's conduct as an individual acting

independently of Green Hills, but rather on the basis of her conduct as corporate agent for Green Hills.

 To impose criminal liability on the defendant as an individual, it was necessary to prove (1) that she was a cemetery authority;[14] (2) that on or about the date charged, she "entered into" a specific prearrangement contract;[15] (3) that she had no prearrangement sales license; and (4) that she had no exemption[16] pursuant to RCW 68.46.130. It was also necessary to prove venue. Const. art. 1, § 22.

 Whether or not the evidence was sufficient to establish most of these elements, it was insufficient to establish the second. Giving the phrase "enters into" its plain meaning, we hold that one "enters into" a contract when he becomes a party to it. He does not "enter into" it if he does not become a party to it, regardless of whether he may have negotiated it or otherwise have participated in its formation. In this case, the defendant did not "enter into" a contract, for she acted as the disclosed agent of Green Hills, and the rule is that a disclosed agent does not become a party to the contract which he or she negotiates. *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 686, 430 P.2d 600 (1967); *Hopkins v. Anderson*, 7 Wn. App. 762, 766, 502 P.2d 473 (1972). Thus, the defendant cannot be criminally liable in her capacity as an individual acting independently of Green Hills, and it is not helpful to define the elements of the crime in terms of her conduct.

To impose liability on the defendant in her capacity as corporate agent for Green Hills, it was necessary to prove

---

[14]She was, pursuant to RCW 68.46.010(2).

[15]For the reasons why this element is set forth as it is, see section III of this opinion.

[16]We assume without deciding that the State has the burden of proving lack of an exemption, instead of the defendant having the burden of proving the existence of an exemption as an affirmative defense. In practical terms, who has the burden should never become an issue, since any party can easily ascertain from the state cemetery board whether an exemption exists.

(1) that Green Hills was a cemetery authority; (2) that Green Hills entered into a specific prearrangement contract;[17] (3) that Green Hills had no prearrangement sales license; (4) that Green Hills had no exemption from the requirement that a sales license be obtained;[18] and that the defendant was legally accountable for Green Hills' conduct because (a) she was an accomplice within the meaning of RCW 9A.08.020,[19] or (b) she performed the conduct in the name of or on behalf of Green Hills within the meaning of RCW 9A.08.030(3).[20] As before, proof of venue was also needed. Const. art. 1, § 22.

The instructions proposed by the State, not objected to by the defendant, and consequently given by the trial court failed to state these elements. The instruction on count 2 said:

(1) That between January 1, 1985 and December 31, 1985, the defendant did knowingly enter into prearrangement contracts,

(2) That the acts so occurred in Cowlitz County, Washington.

The elements in the instruction on count 1 were as follows:

---

[17]See footnote 14.

[18]See footnote 16 above.

[19]RCW 9A.08.020(3)(a) provides,

"(3) A person is an accomplice of another person in the commission of a crime if:

"(a) With knowledge that it will promote or facilitate the commission of the crime, he

"(i) solicits, commands, encourages, or requests such other person to commit it; or

"(ii) aids or agrees to aid such other person in planning or committing it; or

"(b) His conduct is expressly declared by law to establish his complicity."

[20]RCW 9A.08.030(3) provides,

"A person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or on behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf."

(1) That between January 1, 1986 and December 31, 1986 the defendant did knowingly enter into prearrangement contracts,

(2)(a) That more than 20 such prearrangement sales were made, or

(2)(b) That the defendant failed to deposit 100 percent of funds so received into a prearrangement trust fund, and

(3) That the acts so occurred in Cowlitz County, Washington.

Read without surplusage,[21] these instructions were essentially the same, and their effect was to tell the jury that it was a crime to knowingly sell prearrangement contracts in Cowlitz County. This of course was not true—it was only a crime to sell such contracts without a license or exemption—and there was error.

The defendant did not waive the error by failing to object at trial, nor was it harmless. With respect to waiver, the constitutional right to due process is implicated when jury instructions omit essential elements, and constitutional rights can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d at 685. With respect to harmlessness, the omitted elements comprised the gist of the offenses charged, and without them, it is doubtful that the jury was aware of, or found, the facts necessary to support conviction.

The defendant has not claimed that the "to convict" instruction on count 3 omitted essential elements. Thus, the parties have not briefed that issue and we do not address it.

---

[21]In the instruction on count 1, elements (2)(a) and (2)(b) were surplusage. Under the statutory scheme, a cemetery authority is prohibited from selling *any* prearrangement sales contract if it has neither license nor exemption. RCW 68.46.170; RCW 68.46.130. If it has an exemption, it can sell less than 20 prearrangement contracts per year so long as it deposits 100 percent of all funds received into a prearrangement trust fund. RCW 68.46.130. Thus, elements (2)(a) and (2)(b) state facts that the State was required to prove only if Green Hills had an exemption, and there is no evidence in the record that it had such an exemption during the time period covered by count 1.

For the reasons set forth in sections III and IV, we reverse and remand for new trial.

ALEXANDER, C.J., and PETRICH, J., concur.