FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 41

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43216-1-II |
| Respondent, | |
| v. | |
| MICHAEL J. MOYLE, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — A jury found Michael Moyle guilty of two counts of second degree assault, two counts of second degree assault of a child, and hit and run. At trial, Moyle presented a diminished capacity defense. Moyle appeals, arguing that there was insufficient evidence to support the jury's verdict because the State failed to prove intent. Moyle also argues that the jury instructions relieved the State of its burden of proof by failing to allege all elements of the crime charged and the prosecutor committed misconduct by shifting the burden of proof. Moyle's arguments lack merit and we affirm.

## FACTS

On April 13, 2011, Stewart Baker was driving his mother, Tawny Baker, his five-year-old brother, A.B., and his three-year-old daughter, L.B., to the day care at the Independent Bible Church. On the way, the Bakers stopped at the Albertsons grocery store. As the Bakers left the Albertsons parking lot, a black Mustang made a three-point turn and pulled up behind them. The

Mustang followed the Bakers out of the parking lot, up the road, and then rammed into the back of the Bakers' car. The Bakers' car then slammed into a telephone pole on the side of the road. As a result of the collision, five-year-old A.B. suffered a leg fracture and a head injury. Tawny Baker suffered multiple contusions and a broken arm. Three-year-old L.B. had bruises and scrapes.

Moyle was driving the black Mustang. After the Bakers' car hit the telephone pole, Moyle pulled his car to the side of the road. Moyle's friend, Tim Smith, pulled up beside Moyle. Moyle jumped in Smith's truck, then jumped out of the truck, and ran through the woods to a friend's house. Moyle stayed at his friend's house for three days until he was arrested.

On January 23, 2012, the State filed an amended complaint charging Moyle with the following:

Count I: Second degree assault of a child against A.B.
Count II: Vehicular assault against A.B.
Count III: Second degree assault against Tawny Baker
Count IV: Vehicular assault against Tawny Baker
Count V: Second degree assault of a child against L.B.
Count VI: Second degree assault against Stewart Baker
Count VII: Hit and run - injury accident

Moyle raised a diminished capacity defense based on acute stress disorder resulting from an incident approximately three days prior to the Albertsons collision. Three or four days prior to the accident, Moyle was sitting in his car in his driveway when a "black guy" put a knife to Moyle's throat and said, "[G]ive me everything you got." Report of Proceedings (RP) (Jan. 26, 2012) at 9. The attacker attempted to stab Moyle in the face and punched Moyle several times. Moyle fought the attacker off with his own knife. When the attacker ran away, Moyle jumped out of the car and ran after him. The attacker jumped into another vehicle and that vehicle then drove away. Moyle testified that he knew the driver was Ryan Alban, an acquaintance Moyle

had known for approximately 10 years. Moyle also testified that Alban "was just staring at [him] with this menacing, evil grin." RP (Jan. 26, 2012) at 10. The Bakers had no connection with the events three days before the Albertsons incident.

Moyle testified that on the day of the collision, he saw Stewart Baker and "just freaked out, I snapped or something and I turned around -- and all I remember is turning around, passing a couple of people and running into the back of a car." RP (Jan. 26, 2012) at 6. Moyle's expert, Dr. Joseph Nevotti, testified that Moyle suffered from three mental disorders: acute stress disorder, impaired memory functioning, and amphetamine dependence. Nevotti opined that as a result of his mental disorders, Moyle's ability to form intent was impaired at the time of the accident. Specifically, Nevotti testified that at the time of the accident, Moyle was suffering from a flashback that prevented him from being able to form intent. The State presented a rebuttal expert, Dr. Jolene Simpson, a staff psychologist at Western State Hospital. Simpson disagreed with Nevotti's diagnosis of acute stress disorder and testified that she did not believe that Moyle was experiencing a flashback at the time of the accident. Simpson also testified,

> So, my opinion was that I didn't find evidence of an impairment that would make it so that [Moyle] couldn't participate in intentional, goal directed and purposeful action.

RP (Jan. 26, 2012) at 48.

During closing argument, Moyle essentially conceded all elements of the crimes charged except the "mental elements of the crimes." RP (Jan. 26, 2012) at 109. Moyle argued,

> But in fact the explanation for [the collision] is that [Moyle] simply was not in his right mind. He was suffering from diminished capacity, he was unable to form the intent necessary to commit the crimes.

3

RP (Jan. 26, 2012) at 109. During rebuttal, the prosecutor argued that Moyle's diminished capacity argument was not reasonable considering all the evidence presented at trial. Moyle objected but the trial court overruled the objection.

The jury found Moyle guilty of all charges. The trial court vacated counts II and IV (vehicular assault charges) on double jeopardy grounds. Moyle was sentenced to a standard range sentence of 120 months confinement. Moyle appeals his convictions for second degree assault and second degree assault of a child.

## ANALYSIS

SUFFICIENCY OF THE EVIDENCE

Moyle makes two arguments challenging the sufficiency of the evidence supporting the jury's verdict. First, Moyle argues that there was insufficient evidence to prove that three-year-old L.B. suffered substantial bodily harm. Second, Moyle argues that there was insufficient evidence to prove intent because of Moyle's alleged diminished capacity. The State was not required to prove that L.B. suffered substantial bodily harm. And whether Moyle suffered from diminished capacity is a question of fact to be resolved by the jury. Accordingly, Moyle's arguments fail.

Evidence is sufficient if, when viewed in a light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221,

No. 43216-1-II

616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify firsthand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decision regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

Moyle argues that there was insufficient evidence to prove that L.B. suffered substantial bodily harm because she suffered minor scrapes and bruises. But the State was not required to prove that L.B. suffered substantial bodily harm. To convict Moyle of second degree assault of a child, the State is required to prove that Moyle committed second degree assault against a child under the age of 13. RCW 9A.36.130(1)(a). A person commits second degree assault if the person either recklessly inflicts substantial bodily harm or assaults another with a deadly weapon. RCW 9A.36.021(1)(a), (c). Here, there was sufficient evidence to prove that Moyle used his vehicle as a deadly weapon because he used his vehicle to ram the Bakers' vehicle off the road and into a telephone pole. *See* RCW 9A.04.110(6) (A deadly weapon is any "weapon, device, instrument, article, or substance, including a 'vehicle' as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm."). The State presented sufficient evidence to prove that Moyle committed second degree assault of a child against L.B.

Moyle also argues that he was unable to form the requisite intent to commit assault because he suffered from diminished capacity. But the State presented evidence that Moyle did not suffer from a mental disorder that impaired his ability to form the requisite intent at the time of the offense; the State's expert testified that Moyle was able to engage in purposeful and goal-orientated behavior at the time of the collision. Although Moyle presented evidence to the

contrary, the jury clearly found the testimony of the State's expert credible. We do not reevaluate the jury's credibility determinations nor do we reweigh evidence. *Green*, 94 Wn.2d at 221. Instead, we review the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. McCreven*, 170 Wn. App. 444, 476, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013). Accordingly, there was sufficient evidence to support the jury's verdict finding that Moyle was able to form the requisite intent to commit second degree assault.

JURY INSTRUCTIONS

Moyle challenges the jury instructions on two separate grounds. First, Moyle argues that the trial court erred by failing to give a unanimity instruction on the alternative means of committing second degree assault, and he argues that the 'to convict" instructions for second degree assault of a child relieved the State of its burden to prove all elements of the offense beyond a reasonable doubt. Moyle has not preserved his challenge to the trial court's failure to give a unanimity instruction on alternative means. The "to convict" instruction contains all essential elements of the crime of second degree assault of a child. Accordingly, Moyle's challenges to the jury instructions fail.

As an initial matter, Moyle failed to object to the jury instructions he now seeks to challenge. CrR 6.15. Generally, an appellant cannot challenge jury instructions for the first time on appeal unless the erroneous instruction is a "manifest error affecting a constitutional right." RAP 2.5(a); *State v. Embry*, 171 Wn. App. 714, 756, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005 (2013). Here, Moyle belatedly challenges the trial court's failure to provide a unanimity instruction on the alternative means of committing second degree assault. But constitutional due process does not require express jury unanimity as to the alternative means of

a single crime. *See State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994). Accordingly, Moyle's challenge to the trial court's failure to provide a unanimity instruction on alternative means is not a manifest constitutional error and may not be raised for the first time on appeal.

Moyle also argues the "to convict" instructions for second degree assault of a child omitted an essential element of the crime. "[T]he constitutional right to due process is implicated when jury instructions omit essential elements, and constitutional rights can be raised for the first time on appeal." *State v. Hanson*, 59 Wn. App. 651, 663, 800 P.2d 1124 (1990). Therefore, we consider Moyle's challenge to the "to convict" instructions for second degree assault of a child. Here, the "to convict" instructions for second degree assault of a child properly state the law, and the jury instructions read as a whole properly inform the jury of the essential elements of second degree assault of a child.

We review challenges to jury instructions de novo. *State v. Williams*, 133 Wn. App. 714, 720-21, 136 P.3d 792 (2006) (citing *State v. Hunt*, 128 Wn. App. 535, 538, 116 P.3d 450 (2005), *review denied*, 160 Wn.2d 1001 (2007)), *aff'd*, 162 Wn.2d 177, 170 P.3d 30 (2007). "Jury instructions that omit essential elements of the crime violate due process because they relieve the State of its burden to prove every essential element beyond a reasonable doubt." *State v. Williams*, 133 Wn. App. at 721. We read the challenged jury instructions in the context of other jury instructions and the jury instructions as a whole. *State v. Pirtle*, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). The essential elements of second degree assault of a child are (1) the defendant is 18 years of age or older, (2) the child is under the age of 13, and (3) the defendant commits the crime of second degree assault against the child. RCW 9A.36.130(1)(a).

No. 43216-1-II

The court's instructions to the jury read,

> To convict [Moyle] of the crime of ASSAULT OF A CHILD IN THE SECOND DEGREE as charged in Count I [and V], each of the following elements must be proved beyond a reasonable doubt:
> (1) That on or about the 13th day of April, 2011, [Moyle] committed the crime of ASSAULT IN THE SECOND DEGREE against A.B. [and L.B.];
> (2) That [Moyle] was eighteen years of age or older and A.B. [and L.B. were] under the age of thirteen; and
> (3) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 140-41. On its face, the "to convict" instruction contains all the essential elements of second degree assault of a child. But Moyle argues that the "to convict" instruction is improper because it does not include all the essential elements of second degree assault.

The court also provided the jury with an instruction which defined second degree assault:

> A person commits the crime of ASSAULT IN THE SECOND DEGREE when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm or assaults another with a deadly weapon.

CP at 138. Likewise, the jury was instructed on the definition of deadly weapon. Because the jury was provided with a complete definition of second degree assault as it applied in this case, the jury instructions read as a whole properly stated the law and informed the jury of all essential elements of the crime. *See Pirtle*, 127 Wn.2d at 656. Read together, the jury instructions properly presented the essential elements and definitions required to reach a proper verdict and Moyle's challenge fails.

PROSECUTORIAL MISCONDUCT

Moyle also argues that the prosecutor committed misconduct by shifting the burden of proof during rebuttal closing argument. Here, the prosecutor's arguments were a proper

8

response to Moyle's closing arguments and the evidence Moyle presented regarding his diminished capacity defense. Therefore, the prosecutor did not commit misconduct and Moyle's argument fails.

At the beginning of the prosecutor's rebuttal argument the following occurred:

> [PROSECUTOR:] So, solely pertaining to the charges of assault 2nd degree and assault of the child in the 2nd degree, I want you to consider basically whether it would be reasonable for you to believe the Defense's theory because the standard is reasonable doubt. First, let's look at --
> [DEFENSE]: Objection, that misstates the law.
> [PROSECUTOR]: It's my burden to prove to you each element of those charges beyond a reasonable doubt. So I'm going to look first at the reasonableness of [Moyle's] story about what happened to him on April 10th, 2011. And again, this will be something you can take back -- you are the sole judges of the credibility of the witnesses.
> [DEFENSE]: Your honor, again I object, that misstates the law.
> [COURT]: What misstates the law?
> [DEFENSE]: The defense does not have to be reasonable. All the defense has to do is raise a reasonable doubt, a doubt for which a reason exists. Doesn't have to be more likely than not, doesn't even have to be rational.
> [COURT]: I think that's what [the prosecutor] indicated. [The prosecutor] indicated what the burden to the State is and she's asking the jury to look at what [Moyle's] position is. So I think it's proper.
> [PROSECUTOR]: All right. And again, I don't want there to be any misunderstanding. It is my burden to prove each element beyond a reasonable doubt.

RP (Jan. 26, 2012) at 120-21. After comparing Moyle's testimony with some of the expert's testimony, the prosecutor continued,

> Ladies and gentlemen, is it reasonable for you to believe under the circumstances that [Moyle] --
> [DEFENSE]: Objection, this is improper argument.
> [COURT]: I don't believe it is, overruled.
> [PROSECUTOR]: Is it reasonable for you to believe that under the circumstances [Moyle] was so traumatized and terrified that he developed this mental illness within the space of just 3 days? Was somehow in this disembodied dreamlike state in which he wasn't fully aware or conscious of what he was doing, and yet he was able to execute [the] goal directed sequence of purposeful activity. The purpose was to get the face of the person he thought was Ryan Alban, and that ended with the ramming. And he was able during that time to

9

stop, shift, turn, pass other vehicles at a high rate of speed. He did not strike anything until he rammed the rear end of the [Bakers' car].

So, he was able to all [sic] these complicated maneuvers which involved being aware of the environment around him. It's not like he went and hit the first car that he saw, he had a target vehicle in mind, that was the [Bakers' car], and he was able to navigate through all these obstacles and somehow be in this disembodied state where he was not responsible for his actions.

Ladies and gentlemen, that is not reasonable doubt.

RP (Jan. 26, 2012) at 124-25.

We review the trial court's ruling on allegation of prosecutorial misconduct during closing argument for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). The prosecutor's conduct must be both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Prosecutorial misconduct is prejudicial when there is a substantial likelihood that the argument affected the jury verdict. *Emery*, 174 Wn.2d at 760. We review the prosecutor's statements in the context of the entire argument. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). The prosecutor "represents the people and presumptively acts with impartiality in the interest of justice." *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

The prosecutor has wide latitude to argue reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 448 (citing *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991)). "[I]t is not misconduct for the prosecutor to argue that evidence does not support the defense theory or to fairly respond to defense counsel's argument." *Thorgerson*, 172 Wn.2d at 449 (citing *Russell*, 125 Wn.2d at 87). "However, it is improper for the prosecutor to argue that

10

the burden of proof rests with the defendant." *Thorgerson*, 172 Wn.2d at 453 (citing *State v. Gregory*, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006).

Moyle relies primarily on *State v. Miles*, 139 Wn. App. 879, 162 P.3d 1169 (2007), to support his argument that the prosecutor's argument was improper. In *Miles*, the prosecutor argued that the State and the defense had presented mutually exclusive versions of events and that, essentially, the jury would have to believe Miles in order to find him not guilty. 139 Wn. App. at 890. This court held that "to the extent the prosecutor's argument presented the jurors with a false choice, that they could find Miles not guilt only if they believed his evidence, it was misconduct." *Miles*, 139 Wn. App. at 890. But *Miles* is not analogous to Moyle's case.

Here, the prosecutor was not presenting the jury with a false choice and the prosecutor did not tell the jury that it had to believe Moyle to find him not guilty. Rather, the prosecutor's arguments were directly in response to Moyle's argument about his own diminished capacity defense. The prosecutor outlined the facts and argued to the jury that it was not reasonable to believe that a person suffering from mental illness to the extent that it rendered him unable to form intent was capable of chasing down a specific vehicle, through traffic, and ramming that vehicle into a telephone pole. The prosecutor's argument was a proper evaluation of the evidence in response to Moyle's own defense and arguments. *See Thorgerson*, 172 Wn.2d at 453-54; *Russell*, 125 Wn.2d at 85-86.

No. 43216-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_Quinn-Brintnall, J._

QUINN-BRINTNALL, J.

We concur:

_Hunt, P.J._

HUNT, P.J.

_Maxa, J._

MAXA, J.