# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54386-9-II |
| Respondent, | |
| v. | |
| NICHOLAS GENE KAUTZ, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Nicholas Gene Kautz appeals his conviction and sentence for assault in the second degree—domestic violence. Kautz argues that the trial court violated his right to a unanimous jury verdict because it failed to issue a unanimity instruction and that such error was not harmless beyond a reasonable doubt.[1] Kautz argues that the trial court erred by admitting a domestic violence victim statement as a non-hearsay prior inconsistent statement. Kautz also argues that the trial court erred by admitting the victim's statement to law enforcement that he had choked the victim because that statement was not an excited utterance. Kautz contends that his right to due process was violated because a law enforcement officer improperly commented on his right to remain silent. Kautz also contends that the prosecutor committed prejudicial misconduct by arguing facts not admitted into evidence. Kautz further contends that cumulative error requires reversal of his conviction. Finally, Kautz argues that the trial court erred by miscalculating his offender score and that he received ineffective assistance of counsel because defense counsel agreed to the inclusion of washed-out offenses.

---

[1] A unanimity instruction is also commonly called a *Petrich* instruction. *See State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

We hold that the trial court's failure to issue a unanimity instruction violated Kautz's right to a unanimous jury verdict. Because the error is not harmless beyond a reasonable doubt, we reverse Kautz's conviction for assault in the second degree and remand for a new trial. Due to the dispositive nature of the instructional error, we do not need to reach the remainder of Kautz's assignments of error.

FACTS

I.    CHARGING INFORMATION

On February 11, 2020, the State charged Kautz by amended information with one count of assault in the second degree—domestic violence. Specifically, the State alleged that, "on or between June 19th and June 20th, 2019, [Kautz] did intentionally assault another person, to wit: KRISTAN AND/OR KIRSTAN D. POISSONNIER, and thereby did recklessly inflict substantial Clerk's Papers (CP) at 30-31. The State also alleged that Kautz committed assault in the second degree "against a family or household member; contrary to [RCW] 10.99.020." CP at 31 (emphasis omitted). Kautz pleaded not guilty and the case proceeded to a jury trial.

II.    THE TRIAL

Kautz and Poissonnier have dated since September 2017. During that time, the two lived together in Kautz's residence in Skamania County. In the months leading up to June 2019, the two were experiencing problems in their relationship due to Kautz's belief that Poissonnier had been cheating on him.

In the early hours of June 20, 2019, Poissonnier testified that she was in bed when Kautz joined her. Poissonnier recalled "trying to attempt to touch [Kautz] and be loving" in order to "defuse or calm him in some way." Report of Proceedings (RP) at 241. Poissonnier said that Kautz told her "multiple times not to touch him." RP at 218. Poissonnier said that "the last time I put my hand on him I don't know how but it got broken. I don't know if it was wrapped up in his coat, I don't know how I managed to or we managed to break my hand." RP at 218. Poissonnier texted the police who eventually arrived at their shared residence.

Deputy Nicholas Beacock was one of the responding law enforcement officers who spoke with Poissonnier. When he opened the front door, Beacock noticed that Poissonnier was "shaking." RP at 269. Once Beacock and Poissonnier sat in the living room, "she was visibly shaking, breathing heavily and still crying." RP at 269. Poissonnier maintained that emotional response as Beacock asked her what had happened. The State admitted a recording of Poissonnier, where she said,

> Well, it's been to the point where it's kinda just overblown and I was in bed sleeping and he came in and then pushed me over and started saying awful things and he hated me and all this other stuff and then I just was putting my hands on him, to try to do loving touches and he broke my hand.

RP at 271. Beacock testified that Poissonnier's hand injury occurred at about "3:00, 3:30 in the morning" of June 20. RP at 274.

During their conversation, Poissonnier told Beacock about another incident that occurred on June 19. Beacock said that "[Poissonnier] described that they were in an argument about [her] cheating on [] Kautz." RP at 274. Beacock also testified that Poissonnier told him "[t]hat [Kautz] hit her in the face and choked her." RP at 275. This occurred at "about approximately three or four in the afternoon," the day prior to June 20. RP at 274. Beacock testified that Poissonnier did not say anything else about the incident nor did she describe specifically what occurred. But

3

Beacock testified that Poissonnier did say that "[s]he stopped breathing for a few seconds." RP at 276.

Beacock testified that he observed "a red mark on [Poissonnier's] throat and a red mark on the side of her face." RP at 276. To Beacock, the mark on Poissonnier's throat looked fresh. The trial court admitted photographs of the mark on Poissonnier's neck, which were taken by Beacock. The State and Beacock both acknowledged that the photograph was "blurry." RP at 279.

Dr. Marty Bell, an emergency physician at Peace Health Southwest Medical Center, testified at trial. Dr. Bell was Poissonnier's treating physician. He testified that Poissonnier sought medical treatment for her hand. Dr. Bell testified that "[Poissonnier] described being asleep and an ex-boyfriend came in and woke her up, pushed her over pretty forcibly in the bed and he grabbed her hand, she tried to resist, pushed him away and he twisted [her] hand until it snapped." RP at 204-05. Dr. Bell diagnosed Poissonnier's injury as "a fracture in the fourth metacarpal, which is the bone in the hand." RP at 206. However, Dr. Bell also testified that Poissonnier "did not describe to [him] or complain to [him of] any other injuries but for the injury to her hand." RP at 208.

Poissonnier stated that she did not remember telling "the officers about [Kautz] doing anything physical to [her] on the evening of June 19th." RP at 239. She also did not recall "having a red mark below [her] chin and redness under [her] right eye." RP at 248. More specifically, on direct examination, Poissonnier denied the events of June 19 occurring:

> [The State]: Okay and before everything that happened in the bed, was there anything physical that happened earlier in the evening on the evening of June 19th?
> [Poissonnier]: No.
> [The State]: Did he touch you or physically hit you or anything like that, that evening?
> [Poissonnier]: No.

RP at 219. Poissonnier also denied that Kautz strangled or choked her on June 19 on cross-examination:

> [Defense Counsel]: All right. Now, [the State] asked you a number of pointed questions about other examples of [] Kautz being physical with you and you stated that those, you do not have recollection of those incidences occurring, is that correct?
> [Poissonnier]: Correct.
> [Defense Counsel]: And I think you stated and I wish to understand, but you believe you may have been exaggerating things in order to have a removal or separation from [] Kautz, do I understand that correctly?
> [Poissonnier]: Yes.
> [Defense Counsel]: So, you're saying that those things did not happen?
> [Poissonnier]: Yes.

RP at 252-53.

Deputy Joshua Evans, the other responding officer, also testified at trial. Evans recalled "going over a statement with [] Poissonnier on the evening of June 20th." RP at 256. Evans testified that the document is "something [an officer] go[es] over with an alleged victim of domestic violence" and that it is "standard procedure" to determine probable cause in a case. RP at 257. The State introduced a copy of the domestic violence victim statement, which was signed by Poissonnier. In that statement, there was a question that asked whether Poissonnier had "any marks and/or pain as a result of this incident," which was answered in the affirmative and that there was a red mark was on her neck. Clerks Papers (CP) at 116. But below that question, there was an addition question that asked whether, now or in the past, the defendant "[c]hoked (strangled) you." CP at 116. That box was left unchecked.

III.    JURY INSTRUCTIONS

The trial court issued a "to convict" instruction to the jury for assault in the second degree. That instruction provided that:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about or between June 19th, and June 20th, 2019 the defendant

      (a) intentionally assaulted Kristan and/or Kirstan D. Poissonnier and thereby recklessly inflicted substantial bodily harm, or

      (b) intentionally assaulted Kristan and/or Kirstan. Poissonnier by strangulation, or

      (c) intentionally assaulted Kristan and/or Kirstan D. Poissonnier by suffocation, and

(2) That this act occurred in the State of Washington.

If you find from the evidence that element (2) and either alternative element (1)(a) or (1)(b) or (1)(c) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (1)(a) or (1)(b) or (1)(c) has been proved beyond a reasonable doubt, as long as each juror finds that either (1)(a) or (1)(b) or (1)(c) has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all the evidence you have a reasonable doubt as to either element (1) or (2), then it will be your duty to return a verdict of not guilty.

CP at 41.

The trial court did not issue a unanimity instruction to the jury, which would have instructed the jury to "unanimously agree as to which act has been proved" beyond a reasonable doubt.[2] *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 4.25, at 124 (5th ed. 2021) (WPIC).

IV.    CLOSING ARGUMENT & CONVICTION

At closing, the State did not tell the jury which criminal act it was relying on to support its single charge for assault in the second degree. Specifically, in its closing argument, the State informed the jury of the following:

---

[2] This instruction would have tracked the language in 11 WPIC 4.25, which provides that:

The [State] [County] [City] alleges that the defendant committed acts of (identify crime) on multiple occasions. To convict the defendant [on any count] of (identify crime), one particular act of (identify crime) must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of (identify crime).

> You're aware of two separate incidence [sic] here, the strangulation, hand around the throat and then the hand, him breaking her hand. We're arguing that is recklessly causing substantial bodily harm. You don't have to be unanimous as jurors and all believe the strangulation happened. We all vote strangulation or we all believe recklessly caused substantial bodily harm. You, yourself, as an individual juror just need to find beyond a reasonable doubt one of the two—well, there's three alternatives. One of the three alternatives, strangulation, suffocation, recklessly caused substantial bodily harm. That's all that means. You, yourself as a juror, need to find, to find [Kautz] guilty, you need to find beyond a reasonable doubt he committed one of those three alternatives. That's it, it's pretty simple.

RP at 320-21.

The jury found Kautz guilty of assault in the second degree. The jury also found that Kautz and Poissonnier were members of the same family or household. The trial court imposed a standard range sentence of 35 months confinement. Kautz appeals.

ANALYSIS

I.    UNANIMITY JURY INSTRUCTION

Kautz argues that his right to a unanimous jury verdict was violated because the trial court failed to issue a unanimity instruction as to whether the strangulation incident or broken hand incident formed the basis of his conviction for assault in the second degree. The State argues that the trial court did not need to issue a unanimity instruction because the evidence showed a continuing course of conduct. We agree with Kautz.

A.    Legal Principles

Criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21; *State v. Rodriguez*, 187 Wn. App. 922, 936, 352 P.3d 200 (2015).[3] When the State presents evidence of multiple acts that could form the basis of one count charged, either the State must elect

---

[3] *See also State v. Petrich*, 101 Wn.2d 566, 569-70, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988). *Kitchen*, 110 Wn.2d 403, was overruled on other grounds by *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

which act it will rely on for a conviction or the trial court must give the jury a unanimity instruction—instructing the jury to agree on a specific criminal act to support the conviction. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009); *see also Rodriguez*, 187 Wn. App. at 936. "Whether or not a unanimity instruction was required in a particular case is a question of law reviewed de novo." *State v. Lee*, 12 Wn. App. 2d 378, 393, 460 P.3d 701, *review denied*, 195 Wn.2d 1032 (2020).

However, neither election nor a unanimity instruction is needed if the defendant engages in multiple acts that form a single continuing course of criminal conduct. *Rodriguez*, 187 Wn. App. at 936. Likewise, neither election nor a unanimity instruction is needed in an "alternative means" case.[4] *See State v. Hanson*, 59 Wn. App. 651, 657 n.7, 800 P.2d 1124 (1990).

To determine whether multiple acts form one continuing offense, courts view the facts in a commonsense manner. *Rodriguez*, 187 Wn. App. at 937. If the criminal conduct occurred in one place during a short period of time between the same aggressor and victim, then the evidence tends to show one continuing act. *See State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). On the other hand, "where the evidence involves conduct at different times and places, then the

---

[4] In deciding whether a unanimity instruction should have been given, we ask whether the evidence discloses more than one violation of the statute. *Hanson*, 59 Wn. App. at 657. If the evidence proves only one violation, then no unanimity instruction is required. *Id*. But "if the evidence discloses two or more violations, then a [unanimity] instruction will be required, for without it some jurors might convict on the basis of one violation while others convict on the basis of a different violation." *Id*. The former example is what is referred as an "alternative means" case, which is where the evidence includes only one event, even though the applicable statute discloses alternative means by which the defendant may have participated in that event. *Id.* at 657 n.7. Assault in the second degree is an alternative means crime. *State v. Garcia Gomez*, 7 Wn. App. 2d 441, 452, 434 P.3d 89, *review denied*, 193 Wn.2d 1024 (2019). However, this case is not an alternative means case where a unanimity instruction is not required because the State took the position at trial that the evidence here demonstrates two or more violations of assault in the second degree: strangulation and intentional assault of another thereby recklessly inflicting substantial bodily harm.

evidence tends to show 'several distinct acts.'" *Id*. at 17; *see also Petrich*, 101 Wn.2d at 571 (discussing that, although the victim is the same, the differing time frame and identifying place "is not enough to call the offense one transaction."). "Evidence of a single victim . . . is not enough in itself to demonstrate that the offense was one continuing offense." *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

The failure to give a required unanimity instruction is constitutional error. *Bobenhouse*, 166 Wn.2d at 893. "'The error stems from the possibility that some jurors may have relied on one act or incident and some [jurors a different act], resulting in a lack of unanimity on all of the elements necessary for a valid conviction.'" *Id*. (quoting *Kitchen*, 110 Wn.2d at 411). Such an error "will not be upheld unless the error is harmless beyond a reasonable doubt. The presumption of error is overcome only if no rational juror could have a reasonable doubt as to any of the incidents alleged." *State v. Coleman*, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007); *see also Kitchen*, 110 Wn.2d at 411–12.

B.     The Trial Court Erred By Failing To Issue The Required Unanimity Instruction.

Here, the State charged Kautz with one count of assault in the second degree based on two criminal acts: (1) intentional assault thereby recklessly inflicting substantial bodily harm or (2) strangulation. RCW 9A.36.021(1)(a), (g). At trial, the State produced evidence of multiple acts that could form the basis of the single charged count of assault in the second degree. One criminal act was the alleged strangulation of Poissonnier, which purportedly occurred between 3:00 p.m. to 4:00 p.m. on June 19. The other criminal act was the alleged broken hand incident, which purportedly occurred at about "3:00, 3:30 in the morning" on June 20. RP at 274. However, the State did not tell the jury which criminal act it was relying on to support its assault charge. Instead, in its closing argument, the State informed the jury of the following:

*You're aware of two separate incidence here, the strangulation, hand around the throat and then the hand, him breaking her hand.* We're arguing that is recklessly causing substantial bodily harm. You don't have to be unanimous as jurors and all believe the strangulation happened. We all vote strangulation or we all believe recklessly caused substantial bodily harm. You, yourself, as an individual juror just need to find beyond a reasonable doubt one of the two—well, there's three alternatives. One of the three alternatives, strangulation, suffocation, recklessly caused substantial bodily harm. That's all that means. *You, yourself as a juror, need to find, to find [Kautz] guilty, you need to find beyond a reasonable doubt he committed one of those three alternatives.* That's it, it's pretty simple.

RP at 320-21 (emphasis added). And, as discussed above, the trial court did not issue a unanimity instruction to the jury. The State's differing arguments in closing and on appeal implicate the doctrine of judicial estoppel.

"Judicial estoppel precludes a party from 'asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Serpanok Const., Inc. v. Point Ruston, LLC*, 19 Wn. App. 2d 237, 256, 495 P.3d 271 (2021) (quoting *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008)). In relevant part, the doctrine aims "'to preserve respect for judicial proceedings' and 'to avoid inconsistency, duplicity, and . . . waste of time.'" *Id*. (quoting *Miller*, 164 Wn.2d at 540). We consider three factors to determine whether judicial estoppel applies: "(1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party would gain an unfair advantage from the change." *State v. Wilkins*, 200 Wn. App. 794, 803, 403 P.3d 890 (2017).

Here, the first factor weighs in favor of estoppel. As discussed above, the State specifically took the position at trial that the broken hand and strangulation incidents were "separate" events. RP at 320. But on appeal, the State now asserts that the incidents constitute a continuing course of conduct. Because each theory bears specific legal consequences (instruction or no instruction), the State's position on appeal is clearly inconsistent with its position at trial. The second factor

also weighs in favor of estoppel because accepting the State's new position would create the perception that the trial court and the jury were misled. Likewise, the third factor weighs in favor of estoppel. The State would gain an unfair advantage from the change because it would prejudice Kautz's ability to mount a defense to each incident.

Based on the factors above, we conclude that the State is precluded from asserting its continuing course of conduct argument on appeal.[5] *See Wilkins*, 200 Wn. App. at 804. Because the State conceded that there were multiple acts which could have formed the basis of the single charged count of assault in the second degree, and because the State did not elect which criminal act it was relying on for the assault charge, the trial court erred by failing to issue a unanimity instruction to the jury.

---

[5] Even if judicial estoppel does not apply, we would conclude that the State's argument fails because a commonsense evaluation of the evidence does not show a continuing course of criminal conduct.

In *State v. Villanueva-Gonzales*, the Supreme Court set forth a balancing test "for when multiple assaultive acts constitute one course of conduct." 180 Wn.2d 975, 985, 329 P.3d 78 (2014). There is no bright line rule, and the issue is highly dependent on the facts. *Id*. To determine whether multiple assaults constitute a continuing course of conduct, the court balances the following factors: (1) The length of time over which the assaultive acts took place; (2) Whether the assaultive acts took place in the same location; (3) The defendant's intent or motivation for the different assaultive acts; (4) Whether the acts were uninterrupted or whether there were any intervening acts or events; and (5) Whether there was an opportunity for the defendant to reconsider his or her actions. *Id*. "[N]o one factor is dispositive, and the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors." *Id*.

Here, the *Villanueva-Gonzales* factors weighs against the conclusion that the assaults were a continuing course of conduct. First, the strangulation and broken hand incidents did not occur within a short period of time, but were separated by a 12-hour time gap. Second, there is no evidence that the assaults occurred in the same location. Third, the alleged assaults were interrupted by Poissonnier going to bed and sleeping after the alleged strangulation. Fourth, based on the amount of time that lapsed between the alleged strangulation and broken hand incident, there was an opportunity for Kautz to reconsider his actions. *See Villanueva-Gonzales*, 180 Wn.2d at 985. Based on these factors, we conclude that the alleged strangulation and broken hand incidents were separate and distinct acts and not a continuing course of criminal conduct.

11

C.      The Constitutional Error Was Not Harmless Beyond A Reasonable Doubt.

The State argues that trial court's failure to issue a unanimity instruction was harmless "because no rational juror could have entertained a reasonable doubt that each assaultive act established the crime." Br. of Resp't at 9. We disagree.

As discussed above, the failure to give a required unanimity instruction is constitutional error. *Bobenhouse*, 166 Wn.2d at 893. This court will uphold the conviction "only if no rational juror could have a reasonable doubt as to any of the incidents alleged." *Coleman*, 159 Wn.2d at 512. We do not consider the error harmless beyond a reasonable doubt when there is conflicting testimony about the different acts, including when the complaining witness has made contradictory statements. *Id*. at 512-13; *Kitchen*, 110 Wn.2d at 412; *State v. King*, 75 Wn. App. 899, 903-04, 878 P.2d 466 (1994).

Here, a rational juror could have entertained a reasonable doubt as to whether the alleged strangulation occurred on June 19 because there was conflicting testimony regarding that incident. At trial, Beacock testified that Poissonnier told him that "[Kautz] hit her in the face and choked her" on June 19. RP at 275. Beacock further testified that he saw "a red mark on [her] throat and a red mark on the side of her face." RP at 276. But Poissonnier did not say anything else about the incident nor did she describe in specifics what occurred physically. The trial court admitted a photograph of the mark on Poissonnier's neck, but the photograph was blurry. Poissonnier testified that she did not remember telling "the officers about [Kautz] doing anything physical to [her] on the evening of June 19th." RP at 239. She also did not recall "having a red mark below [her] chin and redness under [her] right eye." RP at 248. Poissonnier further testified that she "may have been exaggerating things in order to have a removal or separation from [] Kautz." RP at 253. And at two points in her testimony, Poissonnier denied the events of June 19 (strangulation)

occurring. Based on the above, a rational juror could entertain a reasonable doubt as to whether the strangulation incident occurred on June 19. *Coleman*, 159 Wn.2d at 512-13.

Additionally, a rational juror could have entertained a reasonable doubt as to whether strangulation occurred on June 19 based on the incomplete victim statement form and Dr. Bell's testimony in tandem with Poissonnier's conflicting statements. As discussed above, the victim statement asked whether Poissonnier had "any marks and/or pain as a result of this incident," which was answered in the affirmative. CP at 116. But below that question, there was an additional question that asked whether, now or in the past, the defendant "Choked (strangled) you." CP at 116. That box was left unchecked. And when Poissonnier went to receive medical treatment, Dr. Bell testified that "[Poissonnier] did not describe to [him] or complain to [him about] any other injuries but for the injury to her hand." RP at 208.

The State contends that the error was harmless beyond a reasonable doubt because "no reasonable juror would have found credibility in [] Poissonnier's recantation that [] Kautz strangled her." Br. of Resp't at 14. Specifically, the State contends that "Poissonnier's testimony was plainly calculated to avoid incrimination of [] Kautz." Br. of Resp't at 15. The State directs our attention to the following testimony to support its contention:

> [The State] And before we get to talking about what happened that day, do you still care about [Kautz]?
> [Poissonnier] Absolutely.
> [The State] And, you know, setting this case aside, do you plan to have a future relationship with [Kautz]?
> [Poissonnier] If possible, absolutely.
> [The State] Do you want to be here today?
> [Poissonnier] No, I don't.
> [The State] Are you here because you're under subpoena?
> [Poissonnier] Yes.
> [The State] Okay. Do you want [Kautz] to be charged with a crime or anything like that?
> [Poissonnier] No, I do not.
> [The State] Do you want him to get in trouble?

13

> [Poissonnier]  No.
> [The State]  Do you want him to go to jail?
> [Poissonnier]  No.
> [The State]  Okay and is that because you care about him?
> [Poissonnier]  Yes, I care about him and also I want to move on with my life.  I'm tired of my life being on hold.

RP at 215-16.

However, "[Poissonnier's] testimony requires a determination of credibility that is uniquely the jury's to make." *King*, 75 Wn. App. at 904 (addressing harmless error).  That is not a call for us to make.

Based on the above, a rational juror could have entertained reasonable doubt as to whether the strangulation incident occurred on June 19, 2019.  Therefore, the failure to issue a unanimity instruction was not harmless beyond a reasonable doubt.  *Coleman*, 159 Wn.2d at 512-13.  Where the failure to issue a unanimity instruction is not harmless beyond a reasonable doubt, the proper remedy is to reverse the conviction and remand for a new trial.  *King*, 75 Wn. App. at 904.  Accordingly, we reverse Kautz's conviction for assault in the second degree and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, P.J.

Cruser, J.

14