177 P.3d 776 (2008)
STATE of Washington, Respondent,
v.
Raymond H. MOULTRIE, Appellant.
No. 58797-8-I.
Court of Appeals of Washington, Division 1.
February 25, 2008.
*777 Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
Christine Wilson Keating, King County Prosecutors Office, Seattle, WA, for Respondent.
ACID, J.
¶ 1 Raymond Moultrie appeals his conviction and sentence for one count of second degree rape for sexually assaulting a developmentally disabled woman. He contends that the trial courts instructions did not require the jury to unanimously agree on the *778 act supporting the charged crime. He also challenges a condition of his sentence prohibiting unsupervised contact with vulnerable, ill, or disabled adults as unconstitutionally overbroad and vague. Because an ordinary juror would read the trial court's instruction to mean that the jury had to unanimously agree on the act supporting the charge, we affirm the conviction. But we remand to the trial court to clarify the terms "vulnerable" and "disabled" in the no contact order and strike the term "ill" as vague.

FACTS
¶ 2 On September 25, 2005, Judith. Jack left her. 28 year old daughter, S.S., at home while she took her younger daughter on a play date. S.S. has Downs Syndrome and is unable to perform many basic life skills or stay alone safely for an extended period of time. Moultrie was working as a door-todoor magazine salesman in the neighborhood that day and went to S.S.'s house while she was home alone.
¶ 3 Moultrie knocked on the door, S.S. opened it, and Moultrie convinced S.S. to let him into the house so he could order some magazines for her. But once inside, Moultrie talked to S.S. about sex magazines and told her he would give her magazines if she had sex with him. He then removed her pants, had her bend over a chair face-down, and according to S.S., put his penis in her "butt." When S.S. told him she could not breathe, Moultrie put his penis in her mouth, causing her to gag, and eventually ejaculated. Me told her not to tell anyone and left shortly thereafter.
¶ 4 S.S. immediately telephoned her mother, told her that "`Raymond [wouldn't] give [her] the magazines,'" and sounded very upset. Her mother drove home and, on the way, saw Moultrie walking on her street. She pulled over and confronted Moultrie about trying to sell magazines to people "like [her] daughter," unaware that he had sexually assaulted S.S. Moultrie responded that he was just trying to treat everyone equally. When her mother arrived home, S.S. was pacing and crying and told her that "[We put his wiener in my mouth and it gagged me.'" Her mother called 911, and the police apprehended Moultrie.
¶ 5 The State charged Moultrie with one count of second degree rape. At trial S.S. testified that Moultrie put his penis in her "butt," but her testimony was unclear whether this meant her anus or vagina. The State also offered DNA evidence confirming that semen found in S.S.'s mouth and on her clothing was Moultrie's. The jury found him guilty as charged, and the court sentenced Moultrie to 102 months, the top of his standard range. As a condition of his sentence, the court ordered that he have no contact with S.S., members of her family, and "all vulnerable, ill or disabled adults without the supervision of a responsible adult who has knowledge of this conviction."
I. Unanimity Instruction
¶ 6 Moultrie argues that the trial court's unanimity instruction failed to require the jury to unanimously agree on the act that was proved beyond a reasonable doubt to support his conviction. Moultrie did not object to this instruction in the trial court. But because the issue is one of constitutional magnitude, we consider it on appeal despite Moultrie's failure to raise it below.[1]
¶ 7 A jury must unanimously agree on the act that supports a conviction.[2] When the State alleges multiple acts, any of which could independently prove a charged count, the State must either elect the act upon which it will rely for conviction or the court must instruct the jury that it must unanimously agree that one particular act was proved beyond a reasonable doubt.[3]
¶ 8 Here, the State presented evidence of at least two different acts that could have supported the charge: when Moultrie put his penis into S.S.'s anus or vagina, and *779 when Moultrie put his penis in S.S.'s mouth. The trial court gave a unanimity instruction that stated:
The State alleges that the defendant committed acts of rape in the second degree on multiple occasions. To convict the defendant of rape in the second degree, one particular act of rape in the second degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of rape in the second degree.
Moultrie contends that this instruction was erroneous because it did not mirror the applicable Washington Pattern Jury Instruction, WPIC 4.25. But WPIC 4.25, which Moultrie contends should have been given and was improperly modified by the trial court, has since been modified and is now identical to the unanimity instruction the trial court gave here.[4]
¶ 9 Former WPIC 425, upon which Moultrie relies, was worded slightly differently and included the additional words "beyond a reasonable doubt" in the second sentence:
There are allegations that the defendant committed acts of ____ on multiple occasions. To convict the defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt. You need not unanimously agree that all the acts have been proved beyond a reasonable doubt.[5]
Moultrie contends that by omitting these words, the trial court's unanimity instruction permitted the jury to convict without being unanimous on the underlying act. He argues that, as worded, this instruction did not require the jurors to agree that the same act was proved beyond a reasonable doubt, only that they believed at least one of them was. Thus, he asserts that this instruction would permit the jury to convict if some jurors believed one act was proved beyond a reasonable doubt, while others believed a different act was proved beyond a reasonable doubt., but there was no unanimity as to which act was proved beyond a reasonable doubt. We disagree.
¶ 10 A unanimity instruction is adequate if it complies with the Petrich mandate to ensure jury unanimity.[6] As we noted in State v. Noel, appellate review of an instruction can often result in "even the simplest sentence [being] open to myriad interpretations."[7] In Noel, we reviewed a similar challenge to a unanimity instruction and clarified that "[t]he issue before us . . . is not whether it is possible to interpret [the] instruction . . . to mean one can be convicted without unanimity as to the act proved, but whether the ordinary juror would so interpret it."[8]
¶ 11 Here, the trial courts instruction adequately addressed the requirement of jury unanimity such that the ordinary juror would interpret it to mean that the jury must be unanimous on the act underlying the conviction. The missing language that Moultrie contends is crucial to ensuring unanimity served only to repeat the standard of proof, which was already stated in the first clause of the sentence. The instruction clearly states that the jury must unanimously agree on which act has been proved and that the act must be proved beyond a reasonable doubt.
¶ 12 That the act must be proved beyond a reasonable doubt is stated in the first clause: "one particular act of rape in the second degree must be proved beyond a reasonable doubt." The second clause addresses unanimity on that act: "and you must unanimously agree as to which act has been proved." By stating that the jury has to unanimously agree to "which act has been proved," this clause simply refers back to the *780 "one particular act" that "must be proved beyond a reasonable doubt" in the first clause. Thus, as in Noel, the less strained reading of this instruction and the one an ordinary juror would give to it is that the jury had to unanimously agree on which, act was proved beyond a reasonable doubt. We therefore hold that the instruction properly stated the requirement for jury unanimity.
¶ 13 Moultrie also contends that the "to convict" instruction exacerbated the problem because it failed to distinguish among the three alleged acts of rape, chronologically or otherwise. The "to convict" instruction stated in part, that to convict Moultrie, the jury had to find beyond a reasonable doubt that "on or about the 25th day of September, 2005, the defendant engaged in sexual intercourse with [S.S.]." Moultrie contends that because the instruction did not clearly distinguish the multiple counts by type of penetration, it did not clarify the unanimity instruction. He cites State v. Ellis,[9] for the proposition that a court will uphold a marginally adequate unanimity instruction only when the "to convict" instructions sufficiently distinguish the allegations and thereby serve to facilitate unanimity.
¶ 14 Ellis does not support this contention. There, the court held that the unanimity instruction adequately ensured jury unanimity because "[r]ead as an ordinary juror would read it," the instruction "communicate[d] the idea that before Ellis can be convicted on any count, each juror must agree that the same act has occurred."[10] The court added that while adequate, the instruction was also marginal, because it invited confusion by mixing the two different ideas that all 12 jurors must agree on the act supporting any given count and that the same act cannot be used to convict twice.[11]
¶ 15 The Ell court did not find significant that the "to convict" instructions distinguished the allegations by date, as Moultrie suggests. Indeed the opinion did not mention that this had any bearing on the court's conclusion that the unanimity instruction was adequate. Rather, the court's discussion of the "to convict" instructions was in the context of a separate argument the defendant raised, which is not raised here. The defendant in Ell also argued that the jury might have used the same act to convict him on more than one count because the jury was not told that each of the four charged counts required proof of a different act.[12] The court noted that this was actually a double jeopardy issue, rather than a jury unanimity issue, but ultimately rejected the argument because the trial court's instructions adequately informed the jury that each count required proof of a different act.[13] Moultrie's reliance on Ell is therefore misplaced.
II. No Contact Order
¶ 16 Moultrie also challenges the condition of his sentence prohibiting contact with "vulnerable, ill or disabled adults," as unconstitutionally vague and overbroad. A criminal defendant's constitutional rights during community placement are subject to the infringements authorized by the Sentencing Reform Act ("SRA").[14] We presume that a sentencing condition is constitutional, and the party challenging it has the burden of proving its unconstitutionality beyond a reasonable doubt.[15]
A. Vagueness
¶ 17 The due process vagueness doctrine under the Fourteenth Amendment to the United States Constitution and article I, section 3 of our state constitution requires that (1) the public is provided with adequate notice of what conduct is proscribed, and (2) the public is protected from arbitrary enforcement.[16] *781 Moultrie makes a facial vagueness challenge to the no contact condition, anticipating that he might be accused of engaging in conduct that violates the sentencing conditions.[17] He also cites dictionary definitions of "Vulnerable," "ill," and "disabled" and argues that these terms are ambiguous and susceptible to more than one interpretation. We review-Moultrie's vagueness argument to the extent it raises the purely legal issue of whether the terms "vulnerable," "disabled," and "ill" are ambiguous and thereby fail to provide clear notice of whom he must avoid.[18]
¶ 18 The State argues that because the terms "vulnerable" and "disabled" are defined by statute, they provide sufficient notice of the type of person with whom Moultrie is to avoid contact. But the statutory terms "vulnerable adult" and "developmental disability" are more specific than the general terms "vulnerable" and "disabled" used in the no contact condition.[19] Because there is no indication that the trial court in fact intended to limit the terms of the order to these statutory definitions, we will not presume it did so or otherwise rewrite the trial court's order. We therefore remand for the trial court to clarify what it meant by these terms.
¶ 19 The State also contends that the term "ill" is not vague because reading it in context, an ordinary person would understand that the trial court sought to protect those individuals who are "ill" in the sense that they are unable to fully care for, or make decisions for themselves. We disagree. As Moultrie demonstrates, ordinary people may differ about the meaning and application of the term "ill" adults, which may reasonably include individuals who do not fall within the category described by the State. A person with the flu or other transitory sickness is "ill" as that word is commonly understood. *782 Nor do we perceive that it adds anything of value to the condition. The other two terms the trial court used adequately prohibit Moultrie from having contact with people like the victim in this case. We therefore hold that the term "ill" should be stricken as vague.
B. Overbreadth
¶ 20 Moultrie also argues that the terms "vulnerable," "disabled," and "ill" are overbroad because an order prohibiting contact with such individuals restricts his communication with a large portion of the population and reaches a substantial amount of constitutionally protected activity. He contends that the order should have been more narrowly drawn, prohibiting contact with only disabled adult women as suggested by the facts of his conviction. Because we conclude that the term "ill" must be stricken as vague, we need not reach Moultrie's overbreadth challenge to this term.
¶ 21 But we do note that although we are remanding for the trial court to clarify the terms "vulnerable" and "disabled," these terms are not unconstitutionally overbroad. A law is unconstitutionally overbroad if it sweeps within its prohibitions conduct protected by the First Amendment.[20] The First Amendment protects an individual's right to freedom of speech and association.[21] Because the SRA expressly authorizes a sentencing court to order that the defendant "not have direct or indirect contact with the victim of the crime or a specified class of individuals,"[22] a sentencing court may restrict an offender's freedom of association as a condition of sentencing "if reasonably necessary to accomplish the essential needs of the state and public order."[23] Our courts have also recognized that it would not be reasonable to order a sex offender to have no contact with a class of individuals who do not share a relationship to the offender's crime.[24] Here, the terms "vulnerable" and "disabled" adults accurately describe the class of people victimized by the crime for which Moultrie was convicted. Thus, an order prohibiting contact with such individuals is reasonably related to the State's essential need to protect such adults and is not overbroad.
¶ 22 We also reject Moultrie's argument that the order is an unreasonable restraint on his constitutional rights because of its duration. He notes that in Riles, the order prohibiting contact with minors was for a limited term of community placement. But the prohibition here is within the term of community custody: under RCW 9.94A.712(5), Moultrie's community custody is equal to the remainder of his natural life once he is released from custody because the maximum term for the offense is life.[25] Moultrie Cites to no other authority that requires a sentencing court to otherwise limit the duration of a no contact condition.
*783 ¶ 23 We affirm the conviction but remand to the trial court to clarify the sentencing condition prohibiting contact with "vulnerable" and "disabled" adults and to strike the term "ill" from that order.
WE CONCUR: LAU and ELLINGTON, JJ.
NOTES
[1] State v. Hanson, 59 Wash.App. 651, 659, 800 P.2d 1124 (1990).
[2] State v. Petrich, 101 Wash.2d 566, 569, 683 P.2d 173 (1984).
[3] Id. at 572, 683 P.2d 173; State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988).
[4] WPIC 4.25 (Supp.2005).
[5] (Emphasis added.)
[6] See State v. Noltie, 116 Wash.2d 831, 843, 809 P.2d 190 (1991); State v. Ellis, 71 Wash.App. 400, 406, 859 P.2d 632 (1993).
[7] 51 Wash.App. 436, 440, 753 P.2d 1017, review denied, 111 Wash.2d 1003 (1988).
[8] Id. (reviewing instruction that stated "`you must unanimously agree that at least one particular act has been proved beyond a reasonable doubt'").
[9] 71 Wash.App. 400, 402, 406-07, 859 P.2d 632 (1993).
[10] Id. at 406, 859 P.2d 632.
[11] Id. at 407, 859 P.2d 632.
[12] Id. at 406, 859 P.2d 632.
[13] Id. at 406-07, 859. P.2d 632.
[14] State v. Ross, 129 Wash.2d 279, 287, 916 P.2d 405 (1996); State v. Llamas-Villa, 67 Wash.App. 448, 455, 836 P.2d 239 (1992).
[15] State v. Bahl, 137 Wash.App. 709, 715, 159 P.3d 416 (2007).
[16] State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998).
[17] . He asserts that the terms "vulnerable, ill or disabled adults" provide no meaningful reference to the adults he must avoid. He contends that if he resumes a sales position after he is released from custody, there is no way for him to preevaluate potential clients because "anybody behind a door, on a telephone line, or waiting in line for a milkshake" could have a disability or illness, whether visible or not, and anyone who answers a door to a stranger could be considered "vulnerable."
[18] In Bahl, we acknowledged that we have "not yet agreed it is appropriate to evaluate conditions of sentence for vagueness in a preenforcement challenge" and declined to review a vagueness challenge to a sentencing condition that prohibited possession of erotic material or sexual stimulus material. 137 Wash.App. at 718, 159 P.3d 416. The defendant had not yet been accused of violating the conditions and failed to explain why his vagueness challenge required "evaluation of the conditions in a factual vacuum." Id. at 719, 159 P.3d 416. But we also acknowledged that facial challenges to sentencing conditions have been reviewed when the issue seemed to be "entirely legal" and could be "easily resolve[d] without reference to concrete facts." Id. (citing United States v. Loy, 237 F.3d 251, 267 (3rd Cir. 2001)); see also Riles, 135 Wash.2d at 348-49, 957 P.2d 655 (reviewing similar vagueness challenge to no contact order prohibiting contact with minors when defendant argued that the term "contact" was ambiguous because it could mean both physical touching and non-physical connections).
[19] RCW 9A.44.010(16) defines "vulnerable adult" as a person sixty years of age or older who has the functional, mental, or physical inability to care for himself or herself. "`Frail elder or vulnerable adult'" also includes a person found incapacitated under chapter 11.88 RCW, a person over eighteen years of gage who has a developmental disability under chapter 71A.10 RCW, a person admitted to a long-term care facility that is licensed or required to be licensed under chapter 18.20, 18.51, 72.36, or 70.128 RCW, and a person receiving services from a home health, hospice, or home care agency licensed or required to be licensed under chapter 70.127. RCW,

RCW 71A.10.020(3) defines "Developmental disability" as:
a disability attributable to mental retardation, cerebral palsy, epilepsy, autism, or another neurological or other condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, which disability originates before the individual attains age eighteen, which has continued or can be expected to continue indefinitely, and which constitutes a substantial handicap to the individual. By January 1, 1989, the department shall promulgate rules which define neurological or other conditions in a way that is not limited to intelligence quotient scores as the sole determinant of these conditions, and notify the legislature of this action.
[20] State v. Halstien, 122 Wash.2d 109, 121, 857 P.2d 270 (1993).
[21] U.S. CONST. amend 1: Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (recognizing that the First Amendment provides a "freedom of association" right to make choices to enter into and maintain certain human relationships).
[22] RCW 9.94A.700(5)(b).
[23] State v. Riley, 121 Wash.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting Malone v. United States, 502 F.2d 554, 556 (9th Cir.1974). cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975)).
[24] Riles, 135 Wash.2d at 350, 957 P.2d 655. We note that Moultrie did not argue to the trial court that the sentencing condition was not a crimerelated prohibition and has therefore waived that argument on appeal. But we also acknowledge that the overbreadth analysis applied in Riles is essentially a crime related inquiry. As the court said there, imposing such orders "seems in context to require some relationship to the crime." Id.
[25] The judgment and sentence indicates a maximum term of life and imposes community custody per RCW 9.94A.712 for "any period of time the defendant is released from total confinement before the expiration of the maximum sentence as set forth above." RCW 9.94A.712(5) provides:

When a court sentences a person to the custody of the department under this section, the court shall, in addition to the other terms of the sentence, sentence the offender to community custody under the supervision of the department and the authority of the board for any period of time the person is released from total confinement before the expiration of the maximum sentence.