# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FILED COURT OF APPEALS DIV 1 STATE OF WASHINGTON 2013 AUG 12 AM 11: 40

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68349-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHANNON CHRISTOPHER TRAYLOR, | ) | |
| Appellant. | ) | FILED: August 12, 2013 |
| | ) | |

APPELWICK, J. — Traylor alleges that two of his conditions of community custody are unconstitutionally vague. In a statement of additional grounds he argues that his underlying conviction is not supported by sufficient evidence. We affirm.

## FACTS

Police officers responded to an alarm at a smoke shop and discovered that a rock had been thrown through the store's glass door. Shannon Traylor and two others were spotted fleeing the store and entering a car. The officers stopped the car and arrested the three men. The State charged Traylor with second degree burglary. At trial, the owner of the smoke shop testified that 17 cartons of cigarettes, 25 boxes of cigarettes, and several boxes of cigars were missing.

The jury found Traylor guilty as charged. The sentencing court sentenced him to 29.75 months of confinement and 29.75 months of community custody.

## DISCUSSION

Traylor challenges two of his conditions of community custody:

> Do not possess or consume alcohol and do not frequent establishments where alcohol is the chief commodity for sale.

> . . . .

. . . . Do not possess drug paraphernalia.

He claims that the conditions are unconstitutionally vague.

The due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A statute is unconstitutionally vague if it does not (1) define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is proscribed, or (2) provide ascertainable standards of guilt to protect against arbitrary enforcement. Id. at 752-53. The sentencing court has discretion to impose conditions of community custody, and the sentences will only be reversed if manifestly unreasonable. Id. at 753. Imposing an unconstitutional condition is manifestly unreasonable. Id. In a vagueness challenge concerning a condition of community custody, as opposed to a statute or ordinance, there is no presumption of constitutionality. State v. Sanchez Valencia, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010).

In interpreting a condition, we consider terms in the context in which they are used. Bahl, 164 Wn.2d at 754. When a term is not defined the court may consider the plain and ordinary meaning as set forth in a standard dictionary. Id. If persons of ordinary intelligence can understand what the law proscribes, notwithstanding some possible areas of disagreement, the condition is sufficiently definite. Id. In other words, a condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. Sanchez Valencia, 169 Wn.2d at 793.

I.    Alcohol Condition

Traylor argues that the term "chief commodity for sale" is unconstitutionally vague because a reasonable person can neither quantify what constitutes a "chief commodity" nor describe a standard necessary to avoid arbitrary enforcement. We disagree.

The dictionary definition of "chief" is "marked by greatest importance, significance, influence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 387 (2002). It is a synonym of "principal," "main," and "leading." Id. The dictionary definition of "commodity" is "an economic good." Id. at 458. An establishment where alcohol is the chief commodity sold is an establishment where alcohol is the main or most important good for sale. It connotes an establishment whose primary purpose is the sale of alcohol.

Traylor's arguments fall into two broad categories. First, he argues that the condition's ambiguity is highlighted by the fact that it is unclear if he is prohibited from entering sports venues, stores that sell liquor but are not liquor stores, or a given restaurant. An ordinary person would not perceive selling alcohol to be the main or most important aspect of a sports venue, a theatre, or another similar entertainment venue. The chief commodity of those establishments is entertainment, and Traylor is not prohibited from attending a sporting event at a sports venue or a show at a theatre. He is, however, prohibited from entering a beer garden or bar area within those venues. Likewise, despite the privatization of liquor sales, an ordinary person would not perceive liquor to be the chief commodity at grocery stores, convenience stores, or gas stations, even though they may sell a significant quantity of alcohol. Traylor's complaint that it is

unclear whether he could enter a given restaurant is similarly unpersuasive. Alcohol is the chief commodity of a tavern or a lounge or bar area of a restaurant. He is prohibited from being present there, but would not be prohibited from the separate food service area of a restaurant. Some uncertainty is inherent in any condition. For example, even if the condition specified in detail that he was banned from any facility holding specific types of liquor licenses, he would have to make an inquiry about the license of the establishment to be certain. Again, we note that a "condition 'is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" Valencia, 169 Wn.2d at 793 (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 320, 198 P.3d 1065 (2009), reversed by, 169 Wn.2d 782)).

Second, Traylor argues that there are a variety of tests that could be used to determine whether alcohol is the chief commodity of a given establishment. Failure to designate one of those tests or some other more concrete test, he argues, prevents him from ascertaining which establishments he is prohibited from entering and creates a potential for arbitrary enforcement. He argues that an establishment's "chief commodity" could be measured, for instance, as a percentage of income that comes from alcohol sales or from the gross quantity of alcoholic units sold. Thus, Traylor claims he may violate the condition if he enters an establishments whose sales receipts show that 25 percent of its sales are alcohol related, or a store that sells more alcohol than any other "commodity class."

While including such a parameter might exclude other imagined means to determine a violation, it would provide little real guidance. Those conditions would fail

4

the vagueness test, because sales data is not widely available. It would not be possible for an ordinary person to tell what conduct is proscribed without a specific inquiry of the establishment. Further, the information would vary over time. It could mean that presence one day was a violation and another it was not, and the condition would have to include a temporal element as well as a quantity element to be accurately interpreted. That additional requirement would make it even more difficult for an ordinary person to tell what conduct is proscribed. Such parameters are not necessary for an ordinary person to understand when alcohol is an establishment's chief commodity.

The vagueness doctrine is aimed at preventing the delegation of "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). This condition adequately addresses that concern. Its ordinary meaning provides both sufficient guidance for an ordinary person to understand what conduct is proscribed and ascertainable standards of guilt.

II. Drug Paraphernalia Condition

Traylor asserts that the condition prohibiting him from possessing "drug paraphernalia" is unconstitutionally vague. His argument focuses on the second prong of the vagueness test, and he relies primarily on Sanchez Valencia. The challenged provision in that case provided:

> "Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including, scales, pagers, police scanners, and hand held electronic scheduling and data storage devices."

5

Sanchez Valencia, 169 Wn.2d at 785. The supreme court held that the condition was vague under both prongs. Id. at 793-95.

In determining that the condition did not provide fair notice of what a defendant could or could not do, the court reasoned that the condition referred very broadly to "paraphernalia," as opposed to the more specific term "drug paraphernalia." Id. at 794. It also explained that the condition failed to tie potential violations to the defendant's intent. Id.

The court then concluded that the condition did not provide ascertainable standards of guilt to protect against arbitrary enforcement because an inventive probation officer could envision any common place item as possible for use as drug paraphernalia, such as sandwich bags or paper. Id. at 794. It explained that another officer might not arrest the defendant for the same type of violation and that a condition that leaves that much discretion to individual corrections officers is unconstitutionally vague. Id. at 794-95.

Unlike "paraphernalia," "drug paraphernalia" is a statutorily defined term. The definition in the Uniform Controlled Substances Act provides:

> "[D]rug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.

RCW 69.50.102. The statute further provides a lengthy, non-exhaustive list of items that constitute "drug paraphernalia." RCW 69.50.102. That definition ameliorates each of the concerns raised by the Supreme Court in Sanchez Valencia. It refers to the

6

specific term of art "drug paraphernalia," instead of the general term "paraphernalia." Indeed, the ordinary meaning of "paraphernalia" is simply "personal belongings" or "articles of equipment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1638 (2002). Also unlike the condition in Sanchez Valencia, the statutory definition contains an explicit intent requirement. RCW 69.50.102. That intent requirement alleviates the Supreme Court's concern that the condition in that case would lead to arbitrary enforcement, because one corrections officer could deem a sandwich bag to constitute paraphernalia while another does not. Sanchez Valencia, 169 Wn.2d at 794. Under the statutory definition, possessing a sandwich bag could only constitute a violation if the defendant used or intended to use the bag for a drug-related activity. RCW 69.50.102.

The statutory definition provides sufficient guidance for an ordinary person to determine what conduct is prohibited, and it protects against arbitrary enforcement. But, the sentence condition itself does not reference the statutory definition, and the defendant was not convicted of a crime under the statutory scheme that contains the definition. The issue thus turns to whether the statutory definition is fairly incorporated into the term "drug paraphenalia."

In State v. Moultrie, we considered whether a condition prohibiting contact with "'vulnerable, ill or disabled adults'" was unconstitutionally vague despite the fact that "vulnerable adult" and "developmental disability" are defined by statute. 143 Wn. App. 387, 396-97, 177 P.3d 776 (2008). In particular, we emphasized that "vulnerable adult" and "developmental disability" are specific, legal terms that differ from the general terms "vulnerable" and "disabled." Id. at 397. Without a specific reference to the statutory definitions, we could not conclude that the trial court intended to incorporate them. Id.

7

at 397-98. We remanded for the trial court to clarify the condition, and ordered the term "ill," which has no statutory definition, stricken as vague. Id. at 398.

Unlike in Moultrie, the statutorily defined term here is not more specific than the term imposed by the sentencing court. Rather, the term used in the condition is identical to the term defined in the Uniform Controlled Substances Act. And, "drug paraphernalia" is a term of art with a specific legal meaning. Traylor has not identified a contradictory or alternate ordinary meaning. Nevertheless, we note that, "'[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute'"—"'[s]uch sources are considered presumptively available to all citizens.'" Bahl, 164 Wn.2d at 756 (quoting State v. Wilson, 160 Wn.2d 1, 8, 154 P.3d 909 (2008)) (alterations in original) (internal quotation marks omitted). We emphasize that the better practice is for the sentencing court to specifically tie the term "drug paraphernalia" to its statutory definition. Doing so avoids appeals such as this. But, even without such an express statutory citation, the condition is not unconstitutionally vague in this case because the only reasonable interpretation is that the sentencing court intended to tie the condition to the statutory definition.

III.    Statement of Additional Grounds

Traylor makes two sufficiency of the evidence arguments in a statement of additional grounds. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Traylor first argues that there is no evidence that he or his accomplices had anything in their hands when they left the store, and the police did not recover any of the missing cigarettes or cigars. But, the State only bore the burden to prove that Traylor had intent to commit a crime against a person or property in the building, not that he actually committed a crime against a person or property in the building. RCW 9A.52.030. Theft is not an essential element of second degree burglary. See id. Further, even if it was, Traylor was witnessed fleeing the scene of the crime, and the owner of the shop testified that merchandise was missing after the incident. That evidence is sufficient for a rational trier of fact to conclude that Traylor or his accomplices committed theft.

Traylor also argues that the owner initially reported that nothing was missing, and later changed his assessment. He claims that a responding police officer likewise did not notice that anything in the store was disturbed. Those arguments go to the weight of the evidence, not its sufficiency. And, as mentioned, actual theft is not an essential element of second degree burglary.

We affirm.

WE CONCUR: