# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 77860-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| JAY MAXWELL GRAY, | UNPUBLISHED OPINION |
| Appellant. | FILED: April 29, 2019 |

LEACH, J. — Jay Maxwell Gray appeals the revocation of his special sex offender sentencing alternative (SSOSA) and conditions of community custody. Gray pleaded guilty to two counts of first degree rape of a child. The trial court imposed a SSOSA and several conditions of community custody. Later, the trial court revoked the SSOSA because Gray had failed to make reasonable progress in treatment.

Substantial evidence supports the court's finding that Gray had failed to make reasonable, satisfactory progress in treatment. The State concedes the condition of community custody imposing a curfew is not reasonably crime related and that several other conditions, as worded, are unconstitutionally vague or not crime related. Gray's remaining challenges to the conditions of community custody lack merit. So we affirm the revocation of the SSOSA, reverse in part,

and remand to the trial court to address the conditions of community custody in a manner consistent with this opinion.

## BACKGROUND

In August 2013, Jay Maxwell Gray pleaded guilty to two counts of first degree rape of a child. He admitted to engaging in sexual intercourse with his minor daughter twice during 2011 and 2012. The trial court sentenced Gray to 131 months to life and suspended all but 6 months under a SSOSA. The SSOSA required Gray to make reasonable progress in, and successfully complete, 5 years of sex offender treatment. The sentencing court also imposed several community custody conditions.

Gray served 6 months in jail. He shared a home in Bellevue with other sex offenders. In spring 2016, Gray reported to his community custody officer (CCO), Kelly Buchanan, that he violated the conditions by viewing pornography on two separate occasions. On June 1, 2016, the court ordered he serve 30 days in jail.

In October 2016, Gray failed a polygraph test. Gray provided deceptive answers to two questions: "Have you had any unreported contact with minors since your last polygraph? Have you looked at any pornography since your last violation?"

Molly Thiessen, a community correction supervisor, spoke to Gray after the polygraph test. Gray told Thiessen that "he had noticed a young girl who looked like his daughter (victim) walk by his house." He said he did not have

fantasies about the girl and claimed that because he did not have contact with her, he did not have to report it.

Thiessen then spoke to Willem Jillson, Gray's sexual deviancy counselor at Bellevue Community Services Inc. (BCS). She told Jillson that Gray failed the polygraph and disclosed his statements about the minor girl in his neighborhood. Jillson told her that Gray's sex offender treatment program therapy contract required him to disclose all contact and be transparent about his behavior. Specifically, the contract required him to report all thoughts, fantasies, or contacts with a minor, particularly one that reminded him of his daughter.

Thiessen also spoke with Detective Frank Nunnelee of the Bellevue Police Department. He monitors the sex offender registry in Bellevue. Nunnelee knew of Gray and had not received any reports about him from the community in his neighborhood.

Later in October 2016, Gray met with Thiessen and Nunnelee. Gray told them that he had been watching the minor girl for three years. He also told them he had sexually abused his daughter 1,000 times and raped her 300 times. He said he fantasized about his daughter and missed his relationship with her, including the sex. He reported that he wanted to have a relationship with the girl in his neighborhood and that he had followed her on a trail between his neighborhood and hers. The police arrested Gray. Thiessen recommended that the court revoke his SSOSA.

In November 2016, Jillson and Dr. Bill Lennon terminated Gray from treatment with BCS because he failed "to be adequately transparent by

withholding information [from his treatment provider, treatment group, or corrections officer] about his deviant sexual cycle that included a girl in his neighborhood that he says reminded him of his victim." They said Gray was "not making adequate progress in treatment" and that "he [was] not safe to be in the community." They concluded that Gray was "not adequately progressing in treatment" and recommended the court revoke his SSOSA.

After a hearing, the trial court revoked Gray's SSOSA because he failed to make "reasonable progress in treatment." It ordered Gray to serve the remainder of his indeterminate sentence. It also ordered all of the community custody conditions imposed in his original sentence and judgment remain in full force and effect.

Gray appealed.

## ANALYSIS

Gray challenges the sufficiency of the evidence to support the court's finding that he was not making reasonable progress in treatment. He also claims that several community custody provisions are unconstitutionally vague and/or imposed without statutory authority because they were not crime related. Substantial evidence supports the trial court's revocation decision. We accept the State's concessions on several of the community custody conditions, but Gray's other challenges fail.

### SSOSA

Gray contends that the trial court should not have revoked his SSOSA because the evidence does not support the trial court's finding that he "failed to

make reasonable satisfactory progress in a sexual deviancy treatment program with Bellevue Community Services." He contends the record shows him making reasonable progress in treatment.

A trial court has discretion to revoke a SSOSA.[1] It abuses that discretion when it makes a manifestly unreasonable decision or exercises it on untenable grounds or for untenable reasons."[2]

RCW 9.94A.670 provides certain first time sex offenders with an opportunity for a sentencing alternative, a SSOSA.[3] The statute authorizes a trial court to

> revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment.[4]

Because substantial evidence establishes that Gray had not made reasonable progress in a treatment program when BCS terminated him from its program, the court did not abuse its discretion when it revoked his SSOSA. The providers terminated Gray's treatment because he was not transparent about his thoughts and activities and so he violated his contract with the program. The provider also terminated him because they concluded that he was "not adequately progressing in treatment" and was "not safe to be in the community."

---

[1] State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009).
[2] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[3] RCW 9.94A.670(2)(a), (b).
[4] RCW 9.94A.670(11); State v. Miller, 180 Wn. App. 413, 416, 325 P.3d 230 (2014).

After failing a polygraph test, Gray revealed that he had watched a girl similar in age to his victim and had even followed her. Gray's disclosure and the treatment expert's conclusion that Gray was not progressing with treatment provide sufficient evidence to support the court's finding.

The trial court did not abuse its discretion by revoking Gray's SSOSA.

## Community Custody Conditions

Gray challenges five conditions of community custody as not sufficiently crime related and three conditions as unconstitutionally vague.

We review the trial court's statutory authority to impose community custody conditions de novo.[5] We review authorized community custody conditions for abuse of discretion[6] and do not presume a condition is constitutional.[7] We reverse manifestly unreasonable conditions.[8] "The imposition of an unconstitutional condition is always manifestly unreasonable."[9]

## Crime-Related Challenges

Gray challenges five community custody conditions as not sufficiently crime related.[10] RCW 9.94A.703(3) authorizes a sentencing court to impose

---

[5] State v. Johnson, 180 Wn. App. 318, 325, 327 P.3d 704 (2014).
[6] State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).
[7] State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010).
[8] Irwin, 191 Wn. App. at 652.
[9] In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 167, 430 P.3d 677 (2018) (citing Irwin, 191 Wn. App. at 652), "motion" for review filed, No. 96677-0 (Wash. Dec. 19, 2018).
[10] He challenges conditions 5, 7, 10, 11, and 12 as not reasonably crime related.

discretionary conditions. These include requiring the offender to "[c]omply with any crime-related prohibitions."[11]

RCW 9.94A.030(10) defines a crime-related prohibition as "an order of the court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." "'Directly related' includes conditions that are 'reasonably related' to the crime."[12] "This court reviews the factual bases for crime-related conditions under a 'substantial evidence' standard."[13] The prohibited conduct does not need to be identical to the crime underlying the conviction although there must be "some basis for the connection."[14] "Community custody conditions are 'usually upheld if reasonably crime related.'"[15]

Gray challenges condition 7 that he "[abide] by a curfew." The State concedes that this condition is not reasonably crime related. We accept the State's concession and remand for the trial court to strike it.

Gray challenges part of condition 12, which states, "Do not use or consume alcohol." He contends that the trial court exceeded the authority RCW 9.94A.703(3)(e) provides by including the word "use." The State concedes that the words "use or" should be stricken so that the condition only prohibits

---

[11] RCW 9.9A.703(3)(f).
[12] Irwin, 191 Wn. App. at 656 (citing State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)).
[13] Irwin, 191 Wn. App. at 656.
[14] Irwin, 191 Wn. App. at 657.
[15] State v. Norris, 1 Wn. App. 2d 87, 97, 404 P.3d 83 (2017) (quoting State v. Warren, 165 Wn.2d. 17, 32, 195 P.3d 940 (2008)), rev'd on other grounds, State v. Hai Minh Nguyen, 191 Wn.2d 671, 687, 425 P.3d 847 (2018).

consumption. We accept this concession and remand for the trial court to revise this condition.

Gray challenges, as not crime related, two parts of condition 5, which requires that he "[i]nform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such." He also makes a constitutional challenge we address later. The State concedes that prohibiting Gray from "sexual contact in a relationship without prior approval" is not reasonably crime related. We accept this concession.

Gray also challenges this condition's requirements that he disclose his sex offender status before any sexual contact and that he report any dating relationship to his CCO and treatment provider. After noting that his crime involved a child, he claims that these restrictions do not reasonably relate to his crime and unreasonably restrict his "association with a specified class of individuals."[16]

But monitoring Gray's sexual involvement reasonably relates to protecting the public and furthering treatment. Gray raped his daughter, the child of a woman with whom he had a sexual relationship. Requiring him to disclose his sex offender status before any sexual contact with a dating partner relates reasonably to protecting dating partners and their children. This challenge fails.

---

[16] See State v. Moultrie, 143 Wn. App. 387, 399, 177 P.3d 776 (2008).

We direct the trial court, on remand, to revise condition 5.

Gray challenges, as not crime related, conditions 10 and 11, which prohibit him from entering sex-related businesses or possessing sexually explicit materials, as not reasonably crime related.

Condition 10 states, "Do not enter any sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material."

Condition 11 states,

> Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

In State v. Hai Minh Nguyen,[17] the Washington Supreme Court upheld similar conditions for two people convicted of similar crimes. The court rejected the same arguments that Gray makes here.[18] Like Gray, the defendants in Hai Minh Nguyen claimed that their crimes did not involve the behavior prohibited by the conditions while committing their crimes, so the conditions were not reasonably crime related.[19] But the Supreme Court concluded that they were reasonably crime related because "[i]t is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited

---

[17] 191 Wn.2d 671, 675, 425 P.3d 847 (2018).
[18] Hai Minh Nguyen, 191 Wn.2d at 686-87.
[19] Hai Minh Nguyen, 191 Wn.2d at 683, 687.

from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation."[20]

The trial court did not abuse its discretion in imposing these conditions because they are reasonably crime related.

Vagueness Challenges

Gray challenges three conditions as unconstitutionally vague.[21] To satisfy constitutional due process requirements, a community custody condition must give fair warning of proscribed behavior.[22] So a community custody condition must (1) "'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" and (2) "'provide ascertainable standards of guilt to protect against arbitrary enforcement.'"[23] If a condition implicates a First Amendment right, including the right of assembly or speech, the condition must also be particularly clear to avoid causing a chilling effect on that right.[24]

We consider the context of words when resolving a vagueness claim.[25] If a statute does not define a word, we may consider a standard dictionary definition.[26] A community custody condition is not unconstitutionally vague if a

---

[20] Hai Minh Nguyen, 191 Wn.2d at 686.

[21] Conditions 5, 11, and 18.

[22] U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008).

[23] Bahl, 164 Wn.2d. at 752-53 (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

[24] Bahl, 164 Wn.2d at 753.

[25] Bahl, 164 Wn.2d at 754 (citing Douglass, 115 Wn.2d at 180).

[26] Bahl, 164 Wn.2d at 754 (citing State v. Sullivan, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001)).

person of ordinary intelligence can understand what behavior a condition forbids, given the context in which its terms are used.[27] A sufficiently clear condition can survive a vagueness challenge "'notwithstanding some possible areas of disagreement.'"[28] It need not provide "complete certainty as to the exact point at which [the convicted person's] actions would be classified as prohibited conduct."[29]

Gray challenges that part of condition 18 that prohibits him from entering "any parks/playgrounds/schools and or any places where minors congregate." The State concedes that the language "or any places" is unconstitutionally vague. We accept this concession and remand for the trial court to modify this condition.

Gray contends that condition 5, requiring him to "[i]nform the supervising CCO and sexual deviancy treatment provider of any dating relationship" is unconstitutionally vague. The Supreme Court in Hai Minh Nguyen concluded that the term "dating relationship" provided sufficient information for a person of ordinary intelligence to distinguish it from other types of relationships.[30] So Gray's claim fails.

Gray challenges as unconstitutionally vague condition 11, restricting his access to "sexually explicit materials," "erotic materials," "or any material

---

[27] Bahl, 164 Wn.2d at 754.

[28] Bahl, 164 Wn.2d at 754 (quoting Douglass, 115 Wn.2d at 179).

[29] Hai Minh Nguyen, 191 Wn.2d at 681 (citing City of Seattle v. Eze, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

[30] Hai Minh Nguyen, 191 Wn.2d at 682-83.

depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)" without prior approval.

The Supreme Court in Hai Minh Nguyen concluded that the term "sexually explicit material" was not unconstitutionally vague.[31] But it did not consider the terms "sexually explicit conduct" or "erotic materials."[32]

Gray contends the statutory definition "sexually explicit conduct" lacks specificity.

RCW 9.68A.011(4) defines "sexually explicit conduct" as "actual or simulated":

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse;
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
> (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

The language of the statute is specific enough that a person of ordinary intelligence can understand the depictions of sexually explicit conduct that make

---

[31] Hai Minh Nguyen, 191 Wn.2d at 681.

[32] Hai Minh Nguyen, 191 Wn.2d at 681; see Soundgarden v. Eikenberry, 123 Wn.2d 750, 758-59, 871 P.2d 1050 (1994) (finding the term "erotic" under RCW 9.68.050 not unconstitutionally vague).

materials prohibited without permission. Gray says, "It would be difficult to fairly identify images that showed masturbation or sadomasochistic abuse." But he does not provide examples to support this contention. Without any supporting context, this is an unreasonable statement. Grey also contends that "[w]ithout knowing the purpose for which a depiction was created, it is impossible to know whether the depiction shows sexually explicit conduct under the statutory definition." But only two subsections of the statute require a purpose for depiction. Gray has not established that the condition is vague.

And in Bahl, the court concluded that substituting the term "sexually explicit" for "pornographic" to modify the word "material" changed an unconstitutionally vague condition into a constitutionally sufficient one.[33] In Hai Minh Nguyen, the court determined that "sexually explicit material" used in the same condition challenged here was not unconstitutionally vague.[34] While these cases do not consider "sexually explicit" when it modifies "conduct," they show that an adult of ordinary intelligence could understand the materials the term prohibited Gray from possessing. We conclude that "sexually explicit conduct" as used in this condition is not unconstitutionally vague.

Gray also challenges the term "erotic material" as lacking specificity.

The court in Bahl analyzed the term "erotic" in a condition that did not incorporate a statutory definition.[35] It concluded that, in the context of a condition

---

[33] Bahl, 164 Wn. 2d at 760.
[34] Hai Minh Nguyen, 191 Wn.2d at 680.
[35] Bahl, 164 Wn. 2d at 758-60.

restricting him from frequenting particular establishments, the term "erotic" was not unconstitutionally vague.[36] Gray does not explain why the use of "erotic" here is less specific. Indeed, unlike in Bahl, here the condition defines "erotic materials" by reference to RCW 9.68.050. And an available statutory definition "bolsters the conclusion that [a term] is not . . . unconstitutionally vague."[37]

RCW 9.68.050(2) states,

"Erotic material" means printed material, photographs, pictures, motion pictures, sound recordings, and other material the dominant theme of which taken as a whole appeals to the prurient interest of minors in sex; which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters or sado-masochistic abuse; and is utterly without redeeming social value.

Gray contends the phrase "utterly without redeeming social value" means that the "definition could never provide fair notice in advance to distinguish between permitted and proscribed materials." But a person of ordinary intelligence can understand what is meant by materials "utterly without redeeming social value" in this context because these materials also "appeal[ ] to the prurient interest of minors in sex" and are "patently offensive because [they] affront[ ] contemporary community standards relating to the description or representation of sexual matters or sado-masochistic abuse."[38]

Condition 11 is not unconstitutionally vague.

---

[36] Bahl, 164 Wn. 2d at 762.
[37] Hai Minh Nguyen, 191 Wn.2d at 680; see also Bahl, 164 Wn.2d at 760.
[38] RCW 9.68.050(2).

## CONCLUSION

We affirm in part, reverse in part, and remand. Substantial evidence supports the trial court's finding that Gray had failed to make reasonable, satisfactory progress in treatment. So the trial court did not abuse its discretion when it revoked his SSOSA.

We affirm the community custody conditions that prohibit Gray from entering sex-related businesses and from possessing sexually explicit material. We reverse the community custody condition that imposes a curfew. We remand for modification consistent with this opinion the community custody conditions that require he refrain from sexual contact in a relationship until he receives approval, that he refrain from using alcohol, and that he refrain from entering any places where minors congregate.

Leach, J.

WE CONCUR:

Mann, ACJ

Dwyer, J.