IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>DION DOUGLAS THORNE,<br><br>               Appellant. | No. 84812-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Dion Thorne appeals a conviction for four counts of rape of a child in the third degree. He contends that his constitutional right to a unanimous jury verdict was violated as the State presented evidence of multiple criminal acts in support of each charged count, any one of which could have been relied upon by the jury, and there was neither an election made by the State nor a unanimity instruction provided by the trial court. Because Thorne failed to object at trial and does not satisfy RAP 2.5(a)(3) to raise this issue for the first time on appeal, his constitutional claim is waived and we affirm his conviction. However, we remand for the trial court to strike the victim penalty assessment from the judgment and sentence.

FACTS

The State charged Dion Thorne with four counts of rape of a child in the third degree for having sexual intercourse with M when she was 15 years old. The charging periods for each count captured a separate month between August 1 and November 8, 2021.

The case proceeded to a jury trial which began on October 27, 2022. The evidence presented by the State was largely uncontested; between August and November 2021, while Thorne was 36 years old and M was 15, the two engaged in a sexual relationship. Their relationship was discovered by M's mother, Heather Jameson, on November 8, 2021, when Jameson went to wake M up for school and ultimately saw Thorne in M's bed. Jameson called M's father, Leonard Woody, and explained the situation. Woody had known Thorne for nearly a decade as he was dating Thorne's sister. Shortly after the phone call, Woody arrived at Jameson's residence and took M to the hospital for a sexual assault examination. At the hospital, M told the nurse that she and Thorne had been having sexual intercourse since August 2021. A DNA[1] swab was obtained during M's medical examination and Thorne ultimately stipulated that it would match the DNA sample the State obtained from him.

M testified that she had sexual intercourse with Thorne for the first time in August 2021. She further stated that she had an application on her phone that she used to track her menstrual cycle as well as her sexual activity. A copy of the calendar from that phone application was admitted as exhibit 31 and M explained that the "little hearts under some of the dates" indicated the "days [she] had sex." She clarified that from August through November, 2021, every heart symbol in her phone application's calendar represented a day that she had sexual intercourse with Thorne specifically. The exhibit had hearts on multiple days within each charging period.[2]

---

[1] Deoxyribonucleic acid.

[2] The exhibit contained hearts on the following dates in 2021: August 28 and 29; September 12, 14, 16, 17, 18, 19, 23, 24, 25; October 2, 3, 19, 23, 24, 25; and November 1, 2, 3, 5, 7.

Thorne testified in his own defense. He admitted that he had sexual intercourse with M but claimed that she had told him she was 16 and he "did believe her." Thorne insisted that M told him she was 16 before he ever had sexual intercourse with her. According to Thorne, after they "started dating," M "told [him] that she was about to be 17." On cross-examination, Thorne confirmed that he had a sexual relationship with M from August to November 8, 2021. He neither challenged M's credibility as a witness nor denied having sexual intercourse with her on any of the dates reflected in her calendar or testimony.

The jury found Thorne guilty as charged on all counts. The trial court imposed 60 months of confinement on each count, to run concurrently. The court also ordered Thorne to pay the $500 victim penalty assessment (VPA).

Thorne timely appealed.

## ANALYSIS

I.    Jury Unanimity and RAP 2.5

Thorne avers his constitutional right to a unanimous jury verdict was violated by the trial court "failing to instruct the jury they must unanimously agree on a criminal act." The State contends any such error is unpreserved as Thorne failed to propose such an instruction or object at trial and has not satisfied the requirements of RAP 2.5(a)(3) in order to establish entitlement to review of a challenge raised for the first time on appeal.

An accused person can only be convicted when a unanimous jury determines that the specific criminal act charged in the information has been committed. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). "When the prosecution presents

evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." *State v. Kitchen*, 110 Wn.2d 403, 409, 759 P.2d 105 (1988). "The former is known as 'election,' the latter is known as giving a '*Petrich*' instruction." *State v. Aguilar*, 27 Wn. App. 2d 905, 924, 534 P.3d 360 (2023) (footnote omitted).[3]

Here, the parties submitted their proposed jury instructions and neither the State nor Thorne sought a *Petrich* instruction on jury unanimity as provided in Washington pattern jury instruction 4.25. The trial court provided the parties with its proposed jury instructions, which did not include a unanimity instruction, and Thorne accepted them without objection.

"Parties wishing to raise constitutional issues on appeal must adhere to the rules of appellate procedure." *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). "RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). One exception to this rule is that a party may, for the first time on appeal, raise a "manifest error affecting a constitutional right." RAP 2.5(a)(3). As this exception is "construed narrowly" and only applies to certain constitutional claims, the "defendant must make a showing that satisfies [the] requirements under RAP 2.5(a)(3)." *State v. Kirkman*, 159 Wn.2d 918, 934-35, 155 P.3d 125 (2007); *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014).

---

[3] "The *Petrich* instruction was later incorporated into the Washington Pattern Jury Instructions. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.25, at 110-12 (3d ed. 2008)." *State v. Carson*, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015).

To raise an error for the first time on appeal pursuant to RAP 2.5(a)(3), "an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In other words, the "defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial." *Kirkman*, 159 Wn.2d at 926-27. To demonstrate that the error is manifest, the defendant "must make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial." *Lamar*, 180 Wn.2d at 583. "Without an affirmative showing of actual prejudice, the asserted error is not 'manifest' and thus is not reviewable under RAP 2.5(a)(3)." *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995).

The determination of whether the error is manifest, i.e., whether the error resulted in actual prejudice, "is distinct from deciding whether the error was harmless and therefore does not warrant reversal." *State v. Schaler*, 169 Wn.2d 274, 284, 236 P.3d 858 (2010). "[T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100. In order "to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id.* at 100.

In his opening brief, Thorne does not even mention "actual prejudice," let alone attempt to demonstrate that the failure to provide a unanimity instruction resulted in practical and identifiable consequences in this trial, which is necessary to demonstrate

- 5 -

that the error was manifest. *Lamar*, 180 Wn.2d at 583; *O'Hara*, 167 Wn.2d at 99-100. Rather, Thorne simply asserts "[f]ailure to provide a unanimity instruction when required is a manifest constitutional error that may be raised for the first time on appeal" and cites *State v. Moultrie*, 143 Wn. App. 387, 177 P.3d 776 (2008) and RAP 2.5(a)(3). This bald assertion does not fit his constitutional claim within the narrowly construed exception of RAP 2.5(a)(3). *Kirkman*, 159 Wn.2d at 934-35; *Lamar*, 180 Wn.2d 582-83.

While the court in *Moultrie* did say that the issue there was "one of constitutional magnitude" and reached it despite Moultrie's failure to object at trial, there is nothing in that opinion to suggest the court was making a sweeping holding as to every unanimity challenge on appeal that had not been preserved in the trial court. Further, both *Moultrie* and the case on which it relies for the decision to reach the unanimity challenge, *State v. Hanson*, 59 Wn. App. 651, 800 P.2d 1124 (1990), were decided prior to the bulk of the case law from our Supreme Court clarifying the appellant's burden under RAP 2.5(a)(3).[4] Our Supreme Court in *Lamar* provided detailed analysis of the narrow path to review provided by the RAP and clearly framed it in terms of the appellant's burden:

> [A] *defendant must make a showing* that satisfies [the] requirements under RAP 2.5(a)(3). For a claim of error to qualify as a claim of manifest error affecting a constitutional right, *the defendant must identify* the constitutional error *and show* that it actually affected [their] rights at trial. *The defendant must make a plausible showing* that the

---

[4] *Hanson* was decided in 1990 and the *Moultrie* opinion was issued in February 2008. *Kirkman*, which is often cited as a foundational case on RAP 2.5, was issued in April 2007 and *Lamar* is dated June 2014. More critically, both *Moultrie* and *Hanson* are opinions of this court, whereas *Kirkman* and *Lamar* are controlling authority of our state Supreme Court.

error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial.

180 Wn.2d at 583 (emphasis added). *Moultrie* does not relieve Thorne of his burden to satisfy the requirements of RAP 2.5(a)(3) in order to establish entitlement to review of an error not preserved at trial.

Thorne's misunderstanding of the operation of RAP 2.5(a)(3) continues in his reply brief wherein he responds to the State's waiver argument by reiterating his claim that "a *Petrich* violation is a manifest error affecting a constitutional right," citing both *Moultrie* and *Hanson*. Looking past the additional procedural hurdle that we do not consider arguments presented for the first time in reply,[5] Thorne fails to engage with any of the controlling case law from the Supreme Court that clearly establishes he must still show that the error was manifest and resulted in actual prejudice in order to raise it for the first time on appeal.[6] *McFarland*, 127 Wn.2d at 334; *O'Hara*, 167 Wn.2d at 98. Because Thorne does not present any reasoned argument rooted in the facts of the record from trial as to the "manifest" component of RAP 2.5(a)(3), his juror unanimity claim is not properly before this court and we decline to reach the merits. *Johnson*, 119 Wn.2d at 170; *see also State v. Collins*, 152 Wn. App. 429, 440 n.27,

---

[5] RAP 10.3(c); *State v. Wade*, 28 Wn. App. 2d 100, 108 n.8, 534 P.3d 1221 (2023), *review denied*, 2 Wn.3d 1018 (2024).

[6] Even if Thorne had addressed RAP 2.5(a)(3) and attempted to show that the alleged error was manifest, it is difficult to imagine what he could have identified as actual prejudice. At trial, Thorne admitted to having a sexual relationship with M from August to November 8, 2021. M testified to the same sexual history between them and Thorne did not challenge her credibility. Most critically, the defense closing argument was clear: "We concede [Thorne] and [M] had sex, and they had sex when she was 15 years old, close to 16 but still 15. *The only issue in this case is did she lie to [Thorne] about her age*." (Emphasis added.)

In a multiple acts case where the evidence is uncontroverted, such as this, our Supreme Court has made clear that neither an election nor a *Petrich* instruction is necessarily required. *State v. Coleman*, 159 Wn.2d 509, 514, 150 P.3d 1126 (2007). But even assuming arguendo that failure to elect or instruct on unanimity was an error of constitutional magnitude, Thorne's failure to show actual prejudice in briefing aligns with the lack of prejudice reflected in the record.

216 P.3d 463 (2009) ("'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" (quoting *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.2d 413 (1996)).

II.     Victim Penalty Assessment

Thorne also assigns error to the trial court's imposition of the VPA and seeks remand with an order to strike it from his judgment and sentence.  The State agrees with both the claimed error and the remedy sought.

Thorne was sentenced in December 2022.  The trial court found him to be indigent and imposed the $500 VPA, which was mandatory at that time.  Thereafter, the legislature amended RCW 7.68.035 to prohibit trial courts from imposing the VPA "if the court finds that the defendant, at the time of sentencing, is indigent."  RCW 7.68.035(4); LAWS OF 2023, ch. 449, § 1.  While RCW 7.68.035(4) took effect on July 1, 2023, after Thorne was sentenced, the amendment applies to Thorne as his case is on direct appeal.  *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).  Accordingly, we remand and order the trial court to the strike the VPA from the judgment and sentence.

Affirmed.

WE CONCUR:

- 8